CITY OF BUFFALO, Appellant, *v.* ROADWAY TRANSIT COMPANY et al., Respondents.

Argued December 3, 1951; decided January 24, 1952.

*Fred C. Maloney, Corporation Counsel* (*Herbert B. Forbes* of counsel), for appellant. I. The use of the premises by defendant transit company as a truck terminal is not equivalent to a public garage. II. The use of the premises is governed by the zoning law in effect on October 10, 1946. III. The use of the premises is inherently and necessarily noxious and offensive. IV. The present use of the premises constitutes a " freight terminal " within the meaning of the zoning ordinances. (*Lyman-Richey Sand & Gravel Co.* v. *Nebraska,* 123 Neb. 674.) V. Defendants have no right under the zoning ordinances to use the premises or any part thereof for a freight terminal or for any other industrial use. VI. Even if the zoning ordinances of 1926 are not applicable herein, the use by defendants is in violation of the ordinances in effect when their use commenced. VII. Assuming that the prior use of the premises was a nonconforming first industrial use, defendants may not substitute therefor a different or extended nonconforming use. (*Goodrich* v. *Selligman,* 298 Ky. 863; *Cole* v. *City of Battle Creek,* 298

Mich. 98; *Piccolo* v. *West Haven,* 120 Conn. 449; *Westchester Co. S. P. C. A.* v. *Mengel,* 266 App. Div. 151, 292 N. Y. 121; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43; *President & Trustees of Vil. of Ossining* v. *Meredith,* 190 Misc. 142, 275 App. Div. 850.) VIII. Issuance of a use permit by the director of buildings gave defendants no vested rights where the permit was issued in violation of the zoning ordinances. (*Marcus* v. *Village of Mamaroneck,* 283 N. Y. 325; *Rollins* v. *Armstrong,* 226 App. Div. 687, 251 N. Y. 349; *Matter of S. B. Garage Corp.* v. *Murdock,* 185 Misc. 55; *People ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1.)

*James R. Ulsh* for Roadway Transit Company, respondent. I. The use of the premises in question by Roadway Transit Company is that of a public garage. II. The established use of the premises prior to the enactment of the zoning ordinance in 1926 and thereafter makes permissible use thereof as a nonconforming industrial use. (*Matter of 440 E. 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298; *Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339; *City of Albany* v. *Anthony,* 262 App. Div. 401; *People ex rel. Ortenberg* v. *Bales,* 224 App. Div. 87, 250 N. Y. 598; *City of Olean* v. *Conkling,* 157 Misc. 63; *Sweet* v. *Campbell,* 282 N. Y. 146.) III. The certificate of use and occupancy issued by the director of buildings constitutes an administrative determination of the application of the zoning ordinance and should be followed as a reasonable interpretation thereof. (*Matter of Washington St. Asylum & Park R. R. Co.,* 115 N. Y. 442; *Louisville & N. R. Co.* v. *U. S.,* 282 U. S. 740; *United States* v. *Alabama Railroad Co.,* 142 U. S. 615.) IV. The use of the premises is not a noxious or offensive use within the meaning of the ordinance. (*Bove* v. *Donner-Hanna Coke Corp.,* 142 Misc. 329; *Haber* v. *Paramount Ice Corp.,* 239 App. Div. 324; *People* v. *Brooklyn & Queens Tr. Corp.,* 258 App. Div. 753; *People* v. *Cooper,* 200 App. Div. 413; *People* v. *Transit Development Co.,* 131 App. Div. 174; *Ruggiero* v. *Lockstrip Mfg. Corp.,* 254 App. Div. 783.) V. Enforcement of the zoning ordinance against the transit company in the manner sought by the city would deprive defendant of its property without due process of law. (*Arverne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222; *Matter of Eaton* v. *Sweeny,* 257 N. Y. 176; *Cordts*

v. *Hutton Co.*, 146 Misc. 10, 266 N. Y. 399; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221.)

*Louis W. Manchester* for Alfred B. Dexter, respondent. I. The use of the premises by these defendants is that of a public garage as defined in the zoning law. II. Defendants had the right under the zoning ordinance to any use of the premises listed in the category of first industrial uses of the ordinance. (*Matter of 440 E. 102nd St. Corp.* v. *Murdock*, 285 N. Y. 298; *Matter of Multiplex Garages* v. *Walsh*, 241 N. Y. 527; *People ex rel. Ortenberg* v. *Bales*, 224 App. Div. 87, 250 N. Y. 598; *Matter of Monument Garage Corp.* v. *Levy*, 266 N. Y. 339; *People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484; *Clason* v. *Baldwin*, 129 N. Y. 183; *Matter of Wheelock*, 51 Hun 640, 121 N. Y. 664.) III. The construction of the zoning ordinance by the director of buildings of the city of Buffalo is entitled to great weight. (*Effell Realty Corp.* v. *City of New York*, 165 Misc. 176, 256 App. Div. 972, 282 N. Y. 541; *Matter of Gordon* v. *Board of Appeals*, 131 Misc. 346.) IV. This respondent, as purchaser and owner of an industrial property, should have available precise and definite information as to his rights and liabilities. (*People* v. *Perkins*, 282 N. Y. 329; *Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222; *People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 N. Y. 73; *Matter of Eaton* v. *Sweeny*, 257 N. Y. 176; *Vangellow* v. *Rochester*, 71 N. Y. S. 2d 672; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221; *Nectow* v. *Cambridge*, 277 U. S. 183.)

FROESSEL, J. The City of Buffalo seeks to restrain defendants from using certain premises in alleged violation of the zoning ordinances (Ordinances of the City of Buffalo, ch. LXX).

The premises in question are leased by defendant Roadway Transit Company (hereinafter called Roadway) from defendant Dexter. The lease permits Roadway " to use the said premises hereby let and for the term of this lease for a truck terminal, a private garage for the storage and repair of its trucks and other motor vehicles used in its business, and other activities in connection with its trucking business ". The parties also provided that the lessor — and, after the third year, the lessee — might elect to terminate the lease, " In the event that the

lessee or the lessor is enjoined from using the said premises in the operation of the business of the lessee, as hereinabove defined," and the lessee shall save the lessor harmless from all liability for damages. A revocable permit was obtained from the director of buildings to use the building for " Garage & Truck Terminal ", subject to " all conditions of the Zoning Ordinances ".

The property is located in a residential section. With other parcels not here involved it forms a commercial island in the center of a block otherwise devoted to residence uses, and is connected with West Utica Street by a driveway. The building is a large, one-story brick structure, 101 by 232 feet in area. When Roadway went into possession in November, 1946, it caused some remodeling to be done, including the installation of a loading dock or platform 40 by 95 feet at the east end of the building.

Roadway is engaged in interstate shipping as a motor carrier, its premises being used as a terminal for freight shipped into or out of Buffalo. At this building, shipments from out of State are broken down for delivery within the city. Outgoing freight is also brought in from other cities in trucks other than those belonging to Roadway, and more loading is done within the building than over the dock. No other use is made of the building, except that goods are stored there for periods not exceeding twenty-four hours, and routine maintenance, consisting only of oiling and greasing, is done on the tractors. These operations are carried on twenty-four hours a day.

The company operates about 12 gasoline-powered tractor and trailer units weighing over 6 tons unladen, and as much as 30,000 pounds when loaded. In addition, diesel-powered tractors are hired. The tractor and trailer combination is about 43 feet in length. Additional short wheel-base trucks are also operated. Four shifts of personnel, in addition to the drivers on the Buffalo payroll, are utilized in around the clock operation, the total number of employees in a week being about 71. The greatest number of men on the dock at one time worked during the afternoon shift, when at least 14 are needed. Sleeping arrangements are provided for 9 cross-country drivers.

Each day about 12 Roadway trailers arrive and depart from the premises, and about twice that many tractors. In addition,

about 2 hired trailers arrive and depart each day, and freight is delivered for shipment by other carriers in their own trucks and trailers. The building accommodates about 16 trailers, and 10 are usually there at one time. The dock accommodates 9 trailers and the presence of that many is a daily occurrence.

Under the provisions of the present zoning ordinances, pursuant to the amendment effective August 5, 1946, the premises are in a second residence district, and the use above outlined is clearly nonconforming. Defendants have sought to justify it as a continuation or lawful change of a prior nonconforming use, and, although unsuccessful in the trial court, have prevailed in the Appellate Division.

The original ordinances of 1926 placed these premises in a business district. Prior to and at that time they were being used as a public garage, with the exception of a plot connecting the building with West Utica Street and then used for a two-family residence, but which was demolished in 1935. For present purposes, that plot need not be differentiated from the garage building. The use as a public garage was continued until the time of the afore-mentioned lease to Roadway, except for a time, not now material, during the war years, when secret materials were stored there, under guard, for " the government."

Under the original 1926 enactment (ch. LXX, § 17, subd. A, par. [5]; § 18, subd. A, par. [1]), and the amendments thereto in 1930, a public garage was a permitted use only in a first industrial district, but it was also provided that such use might be allowed in a business district by special permission of the board of appeals, upon certain conditions. The owners of the property in suit never availed themselves of the provisions for such special permission, but continued to operate the garage as a matter of right, as a continuance of a use lawful prior to the adoption of the zoning ordinance, as permitted by section 23 of chapter LXX. The Official Referee and the Appellate Division erroneously found the use as a public garage to be a conforming use in a business district. As we construe the ordinance, that use was a lawful nonconforming use of the first industrial classification in the absence of lawful special permission required for conformance in a business district. It antedated the passage of

the zoning ordinances. Since this is a question of statutory construction, we are not bound by the finding below.

The city argued — and the Official Referee found — that the present use is not a continuation of the former use, nor the equivalent thereof, but is that of a freight terminal, while the Appellate Division adopted defendants' contention that the use as a truck terminal is the equivalent of public garage. The 1926 definition of the term " public garage ", which has not been substantially varied since, was contained in subdivision 25 of section 34 of chapter LXX, as follows: " a use or building or portion of a building other than a private garage, but not including exhibition or show rooms for the storage of new vehicles for sale, its purposes being in general a place for the storage, rental or sale of used vehicles and a place devoid of major facilities such as mechanical or other power for commercial repair work." It is apparent that the activities above described resemble neither the ordinance definition nor the common concept of a public garage. On the contrary, it seems plain to us that the business conducted by Roadway clearly falls within the term " freight terminal " as used in paragraph (7) of subdivision A, section 18 of chapter LXX, the same being a permitted use in a first industrial district.

Defendants concede that the words " freight terminal " as used in the ordinances apply to either railroad or waterway freight terminals, but urge that they cannot be applied to motor truck freight terminals, because these were not within the contemplation of the framers of the ordinance in the year 1925. But a motor freight terminal is not essentially different from any other freight terminal, as the evidence here shows. What was confined to an industrial district in the original ordinances was the operation of handling freight at a terminal point; it can make no difference what is the *mode of transporting* the freight to that point. Broad, general language was used, and it must be assumed that there was a purpose in such use. It is well settled that a legislative body need not act anew each time scientific progress introduces some incidental variation into a situation already covered by general language in the statutes (*Hudson Riv. Tel. Co.* v. *Watervliet Turnpike & Ry. Co.*, 135 N. Y. 393, 403–404). In that case, where it was contended that the use of electric power to run trolleys

was not included in a statutory franchise, we said: " The words of the statute are to be interpreted according to their natural and obvious meaning, and, as the terms employed are not ambiguous, extrinsic facts are not available to restrict the authority which it plainly confers. The language, literally construed, includes undiscovered, as well as existing modes of operation. * * * It would be an unjust reflection upon the wisdom and intelligence of the law-making body to assume that they intended to confine the scope of their legislation to the present, and to exclude all consideration for the developments of the future." More recently, and in *Matter of Di Brizzi* (*Proskauer*) (303 N. Y. 206, 214), we held to the same effect: " The Legislature, in enacting the statute, however, utilized general terms, and did not, either expressly or by implication, limit its operation to a time of war. We may not do so now."

As the ordinance provides that a use specified in any industrial district is not permitted in a business district (§ 17, subd. A, par. [6]), defendants cannot successfully maintain that they have changed to a more restrictive, or business, use, but must rely upon the claimed right to change the nonconforming use to one of an equal, industrial classification. Subdivision A of section 23 of the original ordinance contained the following language: " A non-conforming use shall not be changed except to a more restrictive use." The 1930 amendment substituted therefor the following: " A premises, building or structure arranged, designed or devoted to a non-conforming use, may be changed in use, when changed to a more restricted use ". Section 23 also provides: " A use shall be deemed to be changed to a more restrictive use if the new use be one that is permitted in a section of this chapter with a lower number than the section under which the former use was permitted."

It is defendants' contention that the amendment of 1930 must be read strictly in their favor, and that since such amendment does not expressly *prohibit* any change, they have the right to change the use to one of an equal grade. Reliance is placed chiefly on *Matter of 440 E. 102nd St. Corp.* v. *Murdock* (285 N. Y. 298). That case, however, is not in point, since there the resolution expressly provided for change to an equal nonconforming use (see pp. 306–307). It is true that zoning statutes are to be strictly construed in favor of the landowner

(*Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339), but it is likewise true that we may not disregard the intention of the Legislature when it is clearly to be found in the language used (*id.,* p. 344; *Westchester County S. P. C. A.* v. *Mengel,* 292 N. Y. 121, 126). Giving the language of the ordinances its plain and obvious meaning, we fail to perceive the distinction urged by defendants between the original and the present wording. As we read the amendment of 1930, it retains the same prohibition against change to any but a *more restrictive* use, for it is clearly stated that a change in use is permitted " when changed to a more restricted use ", and not otherwise. That language plainly imposes a condition on the permissive right to change the nonconforming use, in harmony with the basic purpose of zoning laws, to bring about ultimate conformity in the various use districts. Since the present use is not more restrictive than the former nonconforming use, it is illegal and may be enjoined. The Legislature could never have intended that a public garage could thus be converted into a freight terminal, a railroad yard or a crematory, all of which are placed in the same classification (§ 18, subd. A, par. [7]).

Especially is this true when we contemplate the result if defendants are allowed to continue with the present use. This neighborhood has an established residential character, despite the presence for a number of years of the garage and the other nonconforming parcels in the center of the block. This was recognized by the 1946 amendment, rezoning this area from business to second residential. But the use to which defendants have now put this property is such that it cannot fail to "alter the essential character of an otherwise residential neighborhood" (*Matter of Taxpayers' Assn.* v. *Board of Appeals,* 301 N. Y. 215, 219) and to render it not merely commercial, but industrial, in nature. Neither the home nor the shop, permitted in the business district, will long survive in close proximity to Roadway's terminal, for precisely the same reasons that would obtain in the case of a rail or water terminal.

In summary, then, the premises (except the 28 by 98 foot plot connecting the garage with West Utica Street) having been used as a public garage when the zoning ordinances were first adopted, their use as such thereafter was lawful though not conforming. No permission ever having been sought to make it

conforming, its status remains unchanged. When in 1946 defendants leased it for a freight truck terminal as well as a garage, as admitted in their answers, its use as such violated the ordinance. Converting it from a public garage to a freight terminal was not authorized, since both are in the first industrial classification. A nonconforming use may only be changed to a more restrictive use, not to an equally restrictive one.

The issuance of a permit by the director of buildings cannot help defendants, for such a permit cannot confer rights in contravention of the zoning laws (*Marcus* v. *Village of Mamaroneck*, 283 N. Y. 325, 330; see, also, *Matter of 440 E. 102nd St. Corp.* v. *Murdock, supra*, p. 305). Moreover, the ordinance expressly provides that " any permit issued for   *   *   * the use of any premises contrary to the provisions of this ordinance *shall be void* " (ch. LXX, § 26, subd. A; emphasis supplied). Finally, the permit was issued for a " Garage & Truck Terminal ", not for a freight terminal.

The alleged unconstitutionality of the ordinances rests upon the claim that the city means to limit use of the property to second residential purposes, despite the prior use and the impossibility of adapting the building to residential use. Suffice it to say that the record discloses no such intent or threat on the part of plaintiff.

In the view taken herein, it is unnecessary to consider defendants' contention that the present use is a business use falling within the general language of paragraph 6 of subdivision A of section 17 of chapter LXX, permitting any business use *not* specified in an industrial district and not " noxious or offensive by reason of dust, odor, smoke, gas, fumes, noise or vibration." Neither is it necessary to decide whether the weight of the evidence lies with the trial court's finding that the current use is offensive within the meaning of that subdivision, or with the Appellate Division's finding that it is not inherently so.

The judgment of the Appellate Division should be reversed and that of the Supreme Court affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Judgment accordingly.