Frank Del Vecchio, J.
This is an action by the Town of Onondaga to enjoin the sale of beer by the defendant Hubbell alleged to be in violation of the local zoning ordinance. The defendants New York State Liquor Authority and the Onondaga County Alcoholic Beverage Control Board have been made parties to the action in compliance with sections 42 and 124 of the Alcoholic Beverage Control Law because the defendant Hub-bell holds a beer license issued by the State Liquor Authority July 31, 1958.
The individual defendant is the owner of a one-story structure on a lot 50 feet wide and 125 feet deep, known as 3000 South Avenue, Town of Onondaga, located in a One Family Residential District R-l-2 according to the town zoning ordinance adopted April 20, 1948.
The zoning ordinance does not permit any business uses in a R-l-2 district. It does however authorize the continuance of nonconforming uses, but prohibits the extension of such uses.
The complaint alleges that prior to the adoption of the zoning restrictions the defendant Hubbell ‘ ‘ conducted a ‘ snack bar ’ so called and sold and offered for sale sandwiches, hot dogs, refreshments, coffee, ice cream, non-alcoholic beverages and similar items that after the issuance of a beer license she “ conducts a tavern or restaurant and said premises are frequented by numbers of persons who do there purchase and consume beer.” By her answer Hubbell admits she never sold beer prior to July 31, 1958 but denies the other allegations just set forth and as an affirmative defense alleges that the sale of beer does not constitute an extension of a nonconforming use.
To avoid the necessity of a trial on the issues, the parties by stipulation agreed, among other things, that “ the premises were principally known as a place where coffee and refresh- *1001 merits were served including sandwiches, hamburgs, pie and similar items * * * no alcoholic beverages were served * * * the premises were not known as a kind of restaurant where families went for meals, altho some meals were served and the restaurant was not ordinarily or customarily open late in the evening during all the hours during which alcoholic beverages can be sold.” This use was continued as a nonconforming use after the adoption of the zoning ordinance.
In July, 1958 defendant Hubbell extended her business by obtaining a beer license from the State Liquor Authority and thereafter commenced to sell beer for on and off premises consumption, which activity plaintiff now seeks to enjoin as an unlawful extension of a nonconforming use and a violation of the zoning ordinance. Defendants assert however that the sale of beer is not an extension of, but is rather a protected activity within Hubbell’s nonconforming use. They also contend that plaintiff’s effort to prohibit such sale is an unlawful attempt to regulate the sale of alcoholic beverages in contravention of the State’s exclusive'authority in this area.
“ It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit.” (Salerni v. Scheuy, 140 Conn. 566, 570; Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 559-560.)
The courts of this State have had frequent occasion of recent years to consider the character of nonconforming uses. There can be no doubt that such uses of land, incompatible with the planned community, are regarded as a major obstacle to the effective control of the use of realty through zoning. (Anderson, The Nonconforming Use — A Product of Euclidian Zoning, 10 Syracuse L. Rev. 214.) Nevertheless, for a variety of reasons, zoning ordinances, like that of the Town of Onondaga, have frequently included saving provisions permitting the continuance of nonconforming uses, subject however to restrictions upon their expansion, alteration or improvement looking toward their eventual disappearance through deterioration, obsolescence or economic attrition. (Bassett, Zoning [1940], 26-27, 113; Young, City Planning and Restrictions on the Use of Property, 9 Minn. L. Rev. 593, 628.)
More recently, some municipalities — despairing of the delay attendant on such “natural” processes of termination — have moved to elimination of nonconforming uses through legislative fiat. Not only has the Court of Appeals sustained such action when the resulting loss to the user is “ relatively slight and *1002 insubstantial ” (People v. Miller, 304 N. Y. 105; and, see, People v. Wolfe, 272 N. Y. 608; People v. Kesbec, Inc., 281 N. Y. 785); it has also approved the termination of a substantial commercial enterprise through the compulsory amortization of a nonconforming use, subject only to the requirement that the user have a reasonable opportunity to amortize his investment. (Matter of Harbison v. City of Buffalo, supra.) There is every indication that planners and courts alike favor the ultimate disappearance of uses which do not conform to the planning of the community.
Bearing in mind what has been said, and after considering the nature of the business conducted at defendant’s premises prior to the enactment of the zoning ordinance in 1948, this court is of the opinion that the sale of beer is an unlawful extension of such use. The establishment operated by defendant is best characterized as a “ snack bar ” or a “ luncheonette ’ ’, serving mainly quick, simple, short-order items of refreshment and nonalcoholic beverages. A photograph marked as an exhibit shows a modest building and a sign in front of the place lists its offerings as “turkey sandwiches ”, “dogs and coneys”, “fish chips”, “sundaes”, “sandwiches” “hamburgers”. Signs for various soft drink beverages are also displayed. The parties agree that although some meals have been served, the establishment is not a restaurant where families might come for a meal. No alcoholic beverages had ever been sold prior to 1958 and the place did not stay open late in the evening during all the hours when alcoholic beverages are customarily dispensed.
That the sale of beer on the premises in question — which has been going on since the issuance of a license in 1958 — has effected changes in defendant’s business is obvious from the stipulation; defendant concedes that since this innovation (1) the volume of business for the sale of food and beverages has increased, (2) the premises have been used for the sale of beer for consumption off and on the premises to customers who may enter the premises for that sole purpose, and (3) the traffic has increased at the premises.
This is not a mere increase in volume which might be protected as a continuation of the nonconforming use. (People v. Perkins, 282 N. Y. 329; City of Syracuse v. Brenner, 133 N. Y. S. 2d 153.) Nor is it the addition of one more product of the same nature as those already sold. (People v. Perkins, supra.) It is an increase in volume accompanied by a fundamental change in the nonconforming business use. (Matter of Pisicchio v. *1003 Board of Appeals, 165 Misc. 156; Salerni v. Scheuy, supra.) A restaurant with a beer license in a restricted area is much more valuable than one without such a license and requires additional facilities not necessary to a “ snack bar ’ ’. The sale of an intoxicating beverage — in this instance beer — for on and off premises consumption constitutes a departure into a new and different area of business — one so different that the Legislature has seen fit to place this entire field of commerce under close State supervision and regulation. This is not a product which may be taken on at will by anyone operating an establishment like defendant’s, nor is the sale of beer for on and off premises consumption a natural incident of such a business within the public’s concept of lunch bars and luncheonettes.
Although no New York case in point has been discovered, the precise question here presented was passed upon in Fulford v. Board of Zoning Adjustment (256 Ala. 336) where it was held that the sale of beer is a new, different use from the operation of an eating establishment. (See, also, Salerni v. Scheuy, supra.) This court approves the reasoning of the Fulford case and holds, therefore, that the activity here sought to be enjoined is an unlawful extension of defendant’s nonconforming use and a violation of plaintiff’s zoning ordinance.
The second question presented is whether plaintiff, by enforcement of its zoning ordinance in the present case, is encroaching upon the power of the State Liquor Authority to regulate the sale of intoxicating beverages.
The State does not question the power of the town to prohibit the sale of intoxicants anywhere in the township, nor does it challenge its power, by zoning, to exclude restaurants and establishments described in subdivision 3 of section 55 of the Alcoholic Beverage Control Law from particular districts, thereby in effect proscribing the sale of alcoholic beverages in those areas and limiting the power of the State Liquor Authority to determine the locations where liquor may be sold.
Defendants’ claim is that once there exists the kind of establishment for which a beer license might be issued, the State Liquor Authority has the sole and exclusive jurisdiction to determine whether such establishment shall or shall not sell beer and the town lacks authority to prevent sale of beer at such premises, even though it is in violation of the zoning ordinance.
This argument however overlooks the fact that the right of defendant Hubbell’s enterprise to operate at the location in question is at best only a limited or qualified one. The Town of Onondaga, by the adoption of its zoning ordinance in 1948, has *1004 decreed that establishments of the kind described in subdivision 3 of section 55 of the Alcoholic Beverage Control Law shall be excluded from the residential district with which we are concerned. Without diminishing that general restriction, it has permitted the continuance of defendant Hubbell’s prior nonconforming use of her premises — subject however to strict limitation barring any change or extension of such use. The very privilege of continuing business under the zoning ordinance is dependent upon Hubbell’s not varying or enlarging the scope of her activities — which this court finds occurs when beer is sold for on and off premises consumption.
A very real distinction exists between a public eating place conducted within a district permitting business uses, which may be extended without hinderance, and an establishment like defendant’s, the existence of which as a nonconforming use is sharply limited. The power of the State Liquor Authority to issue a license for the sale of beer pursuant to subdivision 3 of section 55 of the Alcoholic Beverage Control Law presupposes the existence of an establishment where such sales may be made. In the case of a nonconforming use which loses its protected status through an unlawful extension in the sale of beer, no such establishment exists.
The court is not required in this proceeding to pass upon the action of the State Liquor Authority in issuing a beer license to defendant Hubbell. It does, however, hold that plaintiff is entitled to enjoin the violation of its zoning ordinance by the sale of beer at the subject premises and that such action, in the circumstances here presented, is not an unlawful infringement on the power of the State to regulate the sale of intoxicating beverages. To hold otherwise would be "to award to a nonconforming user a premium for violating the zoning law, which the courts will not do. (Matter of Pisicchio v. Board of Appeals, 165 Misc. 156,157, supra.) No one would deny that a newcomer wishing to begin the sale of beer in the R-l-2 district under consideration could be excluded. If defendants are successful in this proceeding, Hubbell will have accomplished by indirection that which could not be effected directly — viz., the introduction of a retail beer business in the area — and will have circumvented the provision and spirit of the zoning law.
Defendants have argued that it is the public policy of the State to vest in the Liquor Authority exclusive control over the sale and distribution of alcoholic beverages. As has been shown, even this policy does not prevent municipalities and townships from making certain preliminary decisions which in effect cir *1005 cumscribe the State’s authority. A better answer however is to be found in the public policy, at least equally as strong, which favors the discouragement and eventual elimination of nonconforming uses. The result urged by defendants would, if adopted, have quite the opposite effect. The decision here rendered is in keeping with the policy of gradual termination.
The cases of Grundman v. Town of Brighton (1 Misc 2d 860); Grundman v. Town of Brighton (5 Misc 2d 1006); Mullare v. Town of Hempstead (11 Misc 2d 245) and Blumquist v. City of Jamestown (Sup. Ct., Chautauqua County [1955], O’Brien, J.) are not in point. In each of those instances the town or municipality was attempting to impose a broad general restriction upon the sale of liquor by an invalid ordinance directed to such activity; such is not the case here where the town is seeldng only to enforce its valid zoning ordinance prohibiting the extension of nonconforming uses, whatever the nature of the extension may be.
Plaintiff is entitled to an order enjoining defendant Hubbell from violating the Zoning Ordinance of the Town of Onondaga by the sale of beer for on and off premises consumption at the location in question.
Order accordingly.