In the Matter of DANIEL J. LO CONTI, Petitioner, *v.* CITY OF UTICA, DEPARTMENT OF BUILDINGS, Respondent.

Supreme Court, Oneida County, November 28, 1966.

816

*Longeretta & Longeretta* for petitioner.   *George L. Betro,*
*Corporation Counsel (Richard N. Bach* of counsel), for
respondent.

RICHARD J. CARDAMONE, J.   This article 78 proceeding is
brought by the plaintiff for an order directing the Department
of Buildings of the City of Utica to issue a building permit for
the building of a commercial structure on petitioner's property
in the City of Utica.

The petitioner is the owner of real property located at the
corner of Rutger and Albany Streets in Utica, known as 1002
Albany Street, which he has owned since the year 1962.   On
August 4, 1966, the petitioner applied for a building permit to
construct a "MacDonald Hamburger Drive-In" on this com-
mercially zoned corner property.   At the time the application
was filed the petitioner also submitted architectural plans,
specifications, etc., to the Buildings Department of respondent
city.

A "MacDonald Hamburger Drive-In" would be an appro-
priate use under commercial zoning presently in effect in the
City of Utica.

The Common Council of the City of Utica at its meeting on August 3, 1966, unanimously adopted (one day preceding petitioner's application) an ordinance which in substance changed the procedures pertaining to the application for building permits to be issued by its Department of Buildings. The express purpose of the ordinance was to prevent the issuance of a building permit for a use incompatible with a proposed new zoning ordinance, which at that time was under revision by the City Planning Board. It further provided that, if the Planning Administrator determined that a proposed development was compatible, he would certify that fact to the Department of Buildings and a building permit would be issued following normal procedure; if not, the applicant for a building permit was granted an opportunity to petition the Planning Board for a favorable recommendation to the Common Council, which body could approve, by a majority vote, authorization to issue the permit even though incompatible with the proposed new zoning ordinance.

It appears from the papers that the City of Utica was and still is considering a detailed new zoning ordinance which would make crucial changes regarding the zoning of certain areas. This ordinance is being reviewed and considered by the Planning Board of the city. At the meeting of August 3, members of the Oneida County Planning Board pointed out to the Common Council the possibility of granting a building permit for construction which, although compatible with present zoning ordinance, would be incompatible with the proposed new zoning ordinance. As a result of this, temporary legislation, which consisted of this ordinance, was enacted to prevent the issuance of building permits for purposes incompatible with the new zoning ordinance. Under the terms of the temporary legislation, no building permits would be issued excepting under the terms set forth in the ordinance from its effective date of August 8, 1966 until December 15, 1966.

It is the city's contention that the petitioner's plans and specifications which accompanied his application were inadequate and insufficient for the granting of a permit and that such were not complete for a period of many weeks following his original application; and that in any event, petitioner should have followed the administrative procedures outlined in the ordinance by making application to the Planning Administrator to obtain a certificate from him and upon his refusal, to petition the Planning Board to obtain from them a favorable recommendation to the Common Council in the event that such use was found to be incompatible with the new zoning ordinance.

The petitioner's contention is that the interim ordinance adopted by the Common Council on August 3, 1966 is null and void and of no effect whatsoever since certain requirements of section 156 of the Second Class Cities Law were not met in its enactment. In an affidavit by the City Engineer, it appears that the plans as submitted by the petitioner on August 5, 1966, were defective for several reasons, as follows: the State Labor Department's approval had not been included; the plans had not been stamped by an engineer or an architect; a site plan was not included showing existing curb cuts, utilities, etc.; no cost figure had been submitted to be used as a basis for issuing a permit. A list of these objections and criticisms was furnished to the petitioner's attorney on August 8, 1966. On August 22, 1966, new plans were submitted which still lacked the required site plans. These were furnished by the petitioner's attorney on September 29, 1966. On September 30, 1966, the plans and specifications furnished by the petitioner were forwarded by the City Engineer to the Department of Buildings and to the Traffic Bureau of the City of Utica for their consideration.

Apparently the plans were approved by the City Engineer, the Fire Inspector, the Traffic Inspector, and the State Engineering Department, but the Department of Buildings refused to issue the permit. Although it is not specifically set forth in the papers, it appears from them that the approvals mentioned were obtained after the effective date of the city ordinance.

Section 8, entitled, " Application for Permit " of the Utica Building Code (adopted June 3, 1959) sets forth the information the application must contain, for example: " All plans shall bear the name of the Architect, Structural Engineer or Designer or Electrical Engineer ", further, " application shall show * * * the valuation of the proposed work * * * and a lot plan showing the location of the proposed building ", is required. It would appear that petitioner's application of August 4, 1966, was not in an acceptable form under the applicable provisions of the code. Subsequently, these requirements were presumably met. However, by that time the new ordinance was in effect.

The initial question is whether the ordinance of August 3, 1966 was a valid and effective ordinance. In order to prevent a race by property owners to obtain building permits when it has become common community knowledge that a zoning ordinance is being considered which may affect the uses to which they may put their property, municipalities have adopted interim or stopgap ordinances which impose a moratorium on the issuance of certain types of permits during the pendency of

the proposed new zoning ordinance. The validity of this type of ordinance has been upheld by the courts (*Hasco Elec. Corp.* v. *Dassler*, 143 N. Y. S. 2d 240 [Sup. Ct., Westchester County, 1955]). An "interim" or "stopgap" ordinance will not halt construction when under way and in good faith pursuant to a permit that has been issued, because under these circumstances the owner permittee has acquired a vested property right by reason of the construction costs incurred. (*Matter of Ageloff v. Young*, 282 App. Div. 707 [2d Dept., 1953], mot. for lv. to app. den. 306 N. Y. 981 [1953].) But no "vested rights" in that sense have been acquired by petitioner here, because (1) no construction has begun in reliance on the issuance of a permit and (2) no permit has as yet been issued to petitioner. It is the issuance of a permit that petitioner is seeking by this proceeding. Assuming a willful delay (not conceded by the city) of municipal officials in the issuance of a permit, which at one time would have been sufficient reason for the petitioner to have obtained the issuance of a permit (*Matter of Dubow*, 254 App. Div. 706 [2d Dept., 1938]; cf. *Matter of Dengeles* v. *Young*, 3 A D 2d 758 [2d Dept., 1957]), now the petitioner must show, in addition to willful delay, the acquisition of a vested right. (*Matter of Gramatan Hills Manor* v. *Manganiello*, 30 Misc 2d 117, 120–121 [Sup. Ct., Westchester County, 1961].) Even the contractual obligations assumed by petitioner after he filed his application for a building permit would not vest any rights in him which could not be defeated by the legislative act of the city in adopting this ordinance (*Matter of Atlas* v. *Dick*, 275 App. Div. 670 [2d Dept., 1949], affd. 299 N. Y. 654, 655 [1949]).

Nevertheless, in effect, the ordinance enacted by the City of Utica is similar to a zoning statute. Such are construed to be in derogation of the common-law rights of property owners and as such must be strictly construed in their favor. (*City of Buffalo* v. *Roadway Tr. Co.*, 303 N. Y. 453 [1952].) The procedure laid down by the Legislature for the enactment of change in any zoning regulations or ordinance must be strictly complied with (*Merritt* v. *Village of Port Chester*, 71 N. Y. 309 [1877]; *Village of Williston Park* v. *Israel*, 191 Misc. 6 [1948], affd. 276 App. Div. 968 [2d Dept., 1950], affd. 301 N. Y. 713 [1950]).

Further, section 156 of the Second Class Cities Law provides that the Common Council shall have the power to amend a "building code" and states, further, "but no ordinance amending * * * or modifying such building code * * * shall be passed by the common council until notice shall have been published for at least ten days in the official paper * * * of

the city that on a day stated in such notice, the common council will consider the adoption of a proposed ordinance amending \* \* \* or modifying the building code, or a part thereof \* \* \* and that a copy of such proposed ordinance is on file in the office of the city clerk ''. In construing the notice requirement it is revealing to note that the original language requiring the notice was briefer and stated merely that '' no ordinance amending \* \* \* or modifying such building code \* \* \* shall be passed by the common council until notice that the proposed ordinance shall have been published for at least ten days in the official paper \* \* \* of the City prior to action thereon ''. (L. 1909, ch. 573.) The language presently effective was adopted by chapter 189 of the Laws of 1922 which substantially spelled out what should be stated in the notice, to wit, the fact that the Common Council would be considering the adoption of a proposed ordinance and in what respect, and that a copy of the proposed ordinance would be on file in the office of the City Clerk. Clearly, such language, particularly as it has been amended, makes explicit the requirement that there be a 10-day notice before the statute may be validly adopted.

Informal notice, by word of mouth or by news item is not an adequate substitute for the required formal public notice (*Shefler* v. *City of Geneva*, 1 Misc 2d 807 [1956]). Even an ambiguous notice of a hearing is resolved against the notice and renders any action by a legislative body void. (*Matter of the City of New York*, 228 N. Y. 140 [1920].) The conclusion is well stated in Yokley, Zoning Law and Practice (3d ed., 1965), at pages 296 to 297 as follows: '' The greater weight of authority \* \* \* sustains the right of the municipality to enact an interim ordinance \* \* \*. The cases \* \* \* rejecting interim ordinances, have in nearly every instance pointed out some \* \* \* negligent failure to comply with the law \* \* \*. With respect to interim or stopgap ordinances, the lesson is this — if you don't have the requisite \* \* \* statutory authority, do not attempt interim zoning \* \* \*. If you do have such authority, let the strictest possible compliance therewith be the yardstick governing action ''.

Since the purported amendment to the Building Code is invalid, it will not serve to defeat petitioner's application for a building permit. The Building Department of the City of Utica, is, therefore, directed to issue a building permit to the petitioner.

It is noted further that the limitation as to time contained in the proposed amendment to the code expires by its own terms on December 15, 1966; at which time, absent the enactment of a

valid zoning ordinance, petitioner would be entitled to make application for a building permit without the restrictions imposed by this purported amendment.

The city may, if it be so advised, enact further stopgap or interim legislation which, if in compliance with the statute, (Second Class Cities Law, § 156) may, under certain circumstances, accomplish the intended beneficial results to the entire community. (*Matter of Dengeles* v. *Young*, 3 A D 2d 758, *supra*.)

All that is determined here is that there exists no valid law upon which the city may presently deny to petitioner his property rights. The court must make its determinations according to existing laws. (*Matter of Boardwalk & Seashore Corp.* v. *Murdock*, 286 N. Y. 494, 498 [1941].)