30 N.Y.2d 160 (1972)
In the Matter of Off Shore Rest. Corp., Respondent,
v.
David Linden, as Building Commissioner of the City of Long Beach, et al., Appellants.
Court of Appeals of the State of New York.
Argued February 8, 1972.
Decided March 22, 1972.
Peter J. McCormack, Corporation Counsel (David J. Weinblatt and Morton D. Gottlieb of counsel), for appellants.
Zelda Jonas and Robert A. Smith for respondent.
Chief Judge FULD and Judges BURKE, BERGAN, JASEN and GIBSON concur with Judge BREITEL; Judge SCILEPPI dissents and votes to affirm in a separate opinion.
*162 BREITEL, J.
In this article 78 proceeding to review a denial of a building permit and a variance, respondent municipal agencies appeal. The issue is whether a delicatessen in a business district, exempt from off-street parking ordinance as a pre-existing use, may be altered to a cocktail lounge with increased seating capacity, without provision of any off-street parking.
The Zoning Board of Appeals, after a hearing, denied petitioner's application for a building permit as of right or a variance. The Supreme Court annulled the determination and directed issuance of a building permit. The Appellate Division, by a divided court, affirmed.
There should be a reversal. The seating capacity of the proposed cocktail lounge would be over 15% greater, thus triggering a zoning provision applicable to pre-existing uses, requiring additional off-street parking. Denial of a variance *163 was not arbitrary since there remained a reasonable use of the property.
In January, 1969, petitioner purchased land and building at 897-899 West Beach Street in the City of Long Beach. The land was approximately 40 feet by 90 feet, almost entirely occupied by the building. In 1922, when the building was constructed, there was no off-street parking provided or required, and none has since been provided.
For many years the building housed a delicatessen seating approximately 62 persons. Petitioner proposed to modernize the dining room, the kitchen, and the toilet facilities, and install a bar to accommodate about 15 patrons along one wall. The ceiling of the premises would be lowered and the walls would be paneled. The plans would not require moving any partitioning walls or structural members, or making any physical additions. The layout would remain the same. Chairs and tables would be added to increase the seating capacity to 85. Petitioner planned to transfer a liquor license from its nearby cocktail lounge when the lease there expired December 31, 1970.
Petitioner paid $20,000 for the premises, and the proposed alterations would cost approximately $2,000. To meet off-street parking requirements petitioner would have to use developed property, at a cost of about $40,000.
The delicatessen and the cocktail lounge are each permitted uses in the applicable business zone (Municipal Code of the City of Long Beach, ch. 9, Zoning and Planning, §§ 9-105.12, 9-105.13). Special Term, in directing the issuance of a building permit, held that so long as the building was not structurally expanded or altered, the use could be changed and its seating capacity increased without providing any off-street parking. The Appellate Division majority agreed. The dissenting Justices held that petitioner "had a vested right to dispense with off-street parking requirements [only] to the extent enjoyed by the previous owner".
The zoning ordinance determines what changes are permitted in pre-existing, nonconforming uses (Ann., Zoning  Nonconforming Use  Changes, 87 ALR 2d 4, 9). While zoning authorities may not prohibit these uses entirely, they may *164 prevent changes from one nonconforming use to another (City of Buffalo v. Roadway Tr. Co., 303 N.Y. 453, 461-462; Town of Onondaga v. Hubbell, 19 Misc 2d 999, 1002-1003, affd. 9 A D 2d 1024; 2 Rathkopf, Law of Zoning and Planning, pp. 58-18 to 58-22). They may also restrict the right of the property owner to expand the volume of his business, or to rebuild or alter the structures on the property (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 559; Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 42; Matter of Cordes v. Moore, 308 N.Y. 761; Marcus v. Village of Mamaroneck, 283 N.Y. 325, 331; Matter of Koeber v. Bedell, 280 N.Y. 692; Matter of Pisicchio v. Board of Appeals, Freeport, 165 Misc. 156; Rathkopf, op. cit., supra, at pp. 59-2, 60-1). Indeed, nonconforming uses may be eliminated entirely by amortization over a reasonable period of time (Matter of Harbison v. City of Buffalo, 4 N Y 2d, at p. 561). (See, generally, A. L. I., A Model Land Development Code [Tent. Draft No. 1, 1971], §§ 3-201, 3-202.)
The rights of the property owner, as already stated, are determined by interpreting the ordinance. It has been said in New York that a zoning ordinance must be "strictly construed" in favor of the property owner (e.g., Thomson Ind. v. Incorporated Vil. of Port Washington North, 27 N Y 2d 537, 539; Matter of 440 E. 102nd St. Corp. v. Murdock, 285 N.Y. 298, 304; 1 Rathkopf, Law of Zoning and Planning, p. 8-1; Anderson, Zoning Law and Practice in New York State, pp. 435-436; but cf. Matter of Pisicchio v. Board of Appeals, Freeport, supra). By way of counterpoint, however, it has been said, with equal conviction, that the courts do not hesitate to give effect to restrictions on nonconforming uses (e.g., City of Buffalo v. Roadway Tr. Co., 303 N. Y., at pp. 461-462). It is because these restrictions flow from a strong policy favoring the eventual elimination of nonconforming uses (see Matter of Harbison v. City of Buffalo, 4 N Y 2d, at pp. 559-560; Matter of Crossroads Recreation v. Broz, 4 N Y 2d, at p 42; Matter of Pisicchio v. Board of Appeals, Freeport, supra; 1 Anderson, American Law of Zoning, §§ 6.07, 6.09; 58 Am. Jur., Zoning, § 155).
Section 9-108 of the ordinance contains a general provision exempting pre-existing nonconforming uses: "The limitations *165 of this article shall not apply to any building or structure legally existing at the time of its passage, nor to the continuance of the same existing use of any such building or structure, but they shall apply to any addition or structural alteration of a building to prevent its construction or use for a purpose permitted in a less restricted district classification. No building in which a non-conforming use is superseded by a use permitted in the district in which it is located shall again be changed to a use prohibited in that district. Any non-conforming building damaged by fire or act of God to an extent not exceeding one-half its value or one-half its cubical contents may be repaired within six months, subject to the provisions of the Building Code and used as before." Petitioner contends that this provision exempts its building from all the restrictions of the zoning ordinance including those relating to off-street parking. Short of an "addition or structural alteration" of the building, petitioner asserts the right to expand capacity and change among permitted uses without limit.
Petitioner's position is unsound. It ignores section 9-109, the general provision regulating changes in use, and section 9-112 governing issuance of permits, which have, as will be discussed shortly, prospective effect with respect to buildings or structures otherwise excluded by section 9-108. Section 9-109 provides: "It shall be unlawful for the owner to use or permit the use of any building or premises or part thereof hereafter altered or erected, or to use or permit the use of any building or premises or part thereof hereafter changed to a different use, until a Use Permit shall have been issued to the owner by the Commissioner of Buildings. Such permit shall show that such buildings or premises or part thereof and the proposed use thereof are in conformity with the provisions of this article." Section 9-112 provides in part: "(b) No permit shall be issued unless the plans and designated use indicate that the building and premises will conform with the provisions of this article. * * * (e) It shall be unlawful to use or permit the use of any building or premises, or part thereof, hereinafter changed to a different use, until a Use Permit shall have been issued by the Commissioner showing conformity with the provisions of this article." These provisions are constitutionally valid limitations on the use of property *166 (Matter of Harbison v. City of Buffalo, 4 N Y 2d, at p. 561). They require, without qualification, a permit showing conformity with all the provisions of the ordinance whenever the use of a building is changed.
These sections, therefore, clarify any ambiguities in section 9-108. The first clause of section 9-108 permits "continuance of the same existing use" despite a pre-existing nonconformity. The second clause requires conformity whenever there is a change in use to a "less restricted district classification." The section does not indicate, however, whether conformity is required for changes between nonconforming uses within the same classification, although this restriction has been implied by this court in interpreting a similar ordinance (City of Buffalo v. Roadway Tr. Co., 303 N. Y., at pp. 461-462). Nor does the section indicate whether a pre-existing exemption from off-street parking requirements is lost with a change between permitted uses. Sections 9-109 and 9-112 provide an answer to both these questions: whenever there is a change in use, complete conformity is required.
A change from a delicatessen to a liquor-dispensing cocktail lounge is a change in use (Town of Onondaga v. Hubbell, supra; Salerni v. Scheuy, 140 Conn. 566, 571-572; Jasper v. Michael A. Dolan, Inc., 355 Mass. 17, 24). As a consequence, the Long Beach agencies properly required petitioner's application for a permit to show conformance with off-street parking requirements. It is therefore necessary to discuss what requirements are imposed.
Off-street parking provisions were adopted after the original enactment of the zoning ordinance. Section 9-113 (subd. [18]) imposes minimum off-street parking requirements in the event of structural changes or "increase by units" of both delicatessens and cocktail lounges: "Section 9-113. * * *
* * * Off-street parking space shall be provided in connection with the alteration, erection or increase by units or dimensions of any building or structure, in the following amounts: * * * (18) For restaurants, night clubs, tea rooms, lunch counters or the like, one parking space for each four seats, plus such additional space for employee parking as the Building Commissioner shall deem necessary."
*167 One may construe such a provision narrowly in favor of the property owner. In Matter of 440 E. 102nd St. Corp., v. Murdock (285 N. Y., at pp. 308-309) it was stated: "A building is `enlarged, extended, reconstructured or structurally altered' within the meaning of a zoning resolution only where there is a change or substitution in a substantial particular in the structure of the building itself or in one of its parts or by the addition of another structure to it so that there is an effective conversion of an existing building into a different structure" [citations omitted]. In that case a brick building used for the stabling of horses was converted into a gasoline station. The outside brick walls were covered with stucco, and, presumably, extensive (nonstructural) changes were required for the interior. Applying the Murdock case standard, the addition of paneling, the lowering of the ceiling, and the installation of a bar without disturbing existing partitions or structural members would not be a "structural alteration" within the meaning of the ordinance. The Long Beach ordinance is broader, however, in that it applies to an "increase by units * * * of any building or structure." In doing so, its reach extends beyond structural changes, but the ordinance appears to require that the provision for off-street parking need only take care of the increased capacity created by the alterations.
Thus, section 9-113.1 provides: "Whenever there is a change in the number of employees or business visitors or in the lawful use of the premises or in any other unit of measurement specified in the preceding section, and whenever such change creates a need for an increase or decrease of more than fifteen percent of the number of off-street automobile parking spaces as determined by the requirements of this section, more or less off-street parking facilities shall be provided within a reasonable time on the basis of the adjusted needs as determined by this section. In case of unusual hardship arising out of the requirements of this paragraph, recourse may be had to the Board of Appeals in the manner provided by law."
In the instance of delicatessens and cocktail lounges, and they are both permitted uses in the business zone, the unit of measurement to determine the number of off-street parking *168 spots required is the number of seats, with a ratio of one to four (§ 9-113, subd. [18]). The increase in seats from 62 to 85 is about 37%, not including new accommodations at the bar. Thus, the increase is in excess of the 15% necessary to trigger this section. Since approximately eight additional off-street parking spots were required for the proposed increase in capacity, but none were included in petitioner's proposal, the denial of the building permit was proper.
Many ordinances, unlike that of Long Beach, exempt pre-existing, nonconforming uses and structures without specifying to what extent changes and expansion are permitted or prohibited. The rules applicable to such ordinances are not relevant to this case, for here the ordinance specifies the changes not permitted. Such provisions are controlling (cf., e.g., City of Buffalo v. Roadway Tr. Co., 303 N. Y., at pp. 462-463). Hence, petitioner's property is now subject to the whole ordinance.
If a permit were denied, petitioner had requested a variance to allow the conversion without off-street parking. The application for a permit assumed that the ordinance permits the changes. The variance application assumed the ordinance does not permit the changes, whether regarded as a consequence of use or area limitations. The standards governing the zoning board's discretion to grant or deny variances are found in case law.
Variances are generally classified as "use" or "area" variances depending on the type of restriction to be avoided. Stated broadly, use variances must be granted on a showing of "hardship", while area variances must be granted on a showing of "practical difficulty" (Rathkopf, op. cit., supra, at pp. 45-1 to 45-3; e.g., Matter of Village of Bronxville v. Francis, 1 A D 2d 236, 238-239, affd. 1 N Y 2d 839). Some cases have treated off-street parking requirements as "use" restrictions (Matter of Murphy v. Kraemer, 16 Misc 2d 374; Alumni Control Bd. v. City of Lincoln, 179 Neb. 194, 199). Others have treated them as "area" restrictions (Matter of Overhill Bldg. Co. v. Delany, 28 N Y 2d 449, 453-454; Siller v. Board of Supervisors, 58 Cal. 2d 479, 483; Keeling v. Board of Zoning Appeals, 117 Ind. App. 314, 326-327; Brackett v. Board of Appeals, 311 Mass. 52, 60; *169 Mistretta v. City of Newark, 33 N. J. Super. 205, 215-217; Jehovah's Witnesses Appeal, 183 Pa. Super. 219, 226-228). As stated in the Alumni Control Bd. case (supra), off-street parking requirements subsume "A variance of a different nature, technically involving both use and area" (see, also, 3 Anderson, American Law of Zoning, § 14.45).
To be sure, off-street parking restrictions do not fall easily into either classification; hence, the divergence among the cases. Parking restrictions are an adjunct restriction sometimes tied to a use and at other times to an area restriction, generally depending upon the problem created by the use or the limited area involved. On this view, in determining the rules to govern variance from parking restrictions one should look to the reasons for the restrictions and then adapt rules applicable to use or area variances, whichever best meets the problem. Illustratively, a parking restriction may be required because the building lots are too small, or on the other hand, because the use of the building regardless of lot size will cause many vehicles to be brought to the site. Most often, the parking restriction will relate to uses, and the ordinance by requiring off-street parking for certain uses by a stated formula will so indicate, as in this case. In others, the parking restriction may be related by the ordinance to the area. That was the situation in Matter of Overhill Bldg. Co. v. Delany (28 N Y 2d, at pp. 453-454) where the requirement for off-street parking was defined in terms of the office space available in the subject building. The Overhill court, looking to Matter of Fulling v. Palumbo (21 N Y 2d 30), with some qualifications it is true, applied rules applicable to area variances but also spoke of the test as one which was not met unless the owner was left with no reasonable use for his property. In this case, applying the rules applicable to use variances and in accord with the analysis in the Overhill case, it is material that the petitioner has made no showing that the property cannot yield a reasonable return without increasing the burden on street parking in violation of section 9-113.1 of the zoning ordinance. Indeed, there is no indication that the present use of the property as a delicatessen is *170 not profitable. No hardship is shown except that a desired expansion is not available, and that is exactly what the policy in terminating nonconforming uses is designed to control.
Accordingly, the order of the Appellate Division should be reversed, and the application for a building permit or a variance denied, with costs.
SCILEPPI, J. (dissenting).
The order appealed from should be affirmed since the courts below have correctly found that petitioner is entitled to a building permit. Inasmuch as the construction of this building and its use as a delicatessen anteceded the off-street parking provision of the zoning ordinance, it was a valid nonconforming building which could be continued provided that additional or structural alterations were not made (Zoning Ordinance, § 9-1.08). There is no question here but that the change contemplated in petitioner's plans to a restaurant does not fall into this category (Matter of 440 E. 102nd St. Corp. v. Murdock, 285 N.Y. 298); nevertheless, the majority in this court finds that a permit should not issue simply because of a technical change from a delicatessen to a liquor-dispensing restaurant, even though both are permitted uses in the business zone. Absent an additional or structural alteration of the building, the off-street parking requirement does not apply to a prior nonconforming building. It is this consideration which is dispositive here. The other sections of the zoning ordinance (see, e.g., §§ 9-109, 9-112, 9-113), upon which the majority predicates its decision, do not support a different view since their application is limited to situations where a technical change in use does in fact entail a structural change. Thus, contrary to the position expressed by the majority, the pre-existing exception from the off-street parking requirement was not lost and petitioner has wrongfully been denied its building permit.
I would simply add that if I could agree that the ordinance should be applied to this property, I would then conclude that the application for a variance was properly denied. In this regard, the majority seems to retract from the view espoused in Matter of Overhill Bldg. Co. v. Delany (28 N Y 2d 449, 453-454) where we recently postulated that off-street parking requirements take on the semblance of limitations on area *171 and as such must be resolved according to that body of law. Nevertheless, it is said that the case before us should be treated as one involving a use variance because off-street parking restrictions defy classification and it is necessary to look to the reasons for a parking restriction in our resolution of the problem presented. This was not the holding in Overhill; there, our decision was premised on the nature of the restriction. Inasmuch as an off-street parking requirement limits the quantum of space that an owner of property may properly use, it restricts area in the same manner as minimum lot size or set-back requirements and it was for that reason that the controversy in Overhill was adjudicated under the principles enunciated in Matter of Fulling v. Palumbo (21 N Y 2d 30). Thus, it is my view that because of Overhill, use variance rules do not obtain here.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.