Paul D. Bennett, Esq. Assistant City Attorney, Ithaca
I am writing in response to your request for an opinion as to various zoning matters.
First, you have asked whether the city may, by legislative discretion, deem the off-street parking requirements contained in its zoning ordinance to be "area requirements" as opposed to "use requirements".
Generally speaking, variances are classified as either "use" or "area" variances depending on the type of restriction involved. The standard of proof required differs with the type of variance sought. Basically, use variances may be granted on a showing of "hardship", while area variances may be granted on a less burdensome showing of "practical difficulty" (Matter of Village of Bronxville v Francis, 1 A.D.2d 236 [3d Dept], 238-239, affd 1 N.Y.2d 839 [1956]). In the past, some cases have treated off-street parking requirements as use restrictions (Matter of Off ShoreRestaurant Corp. v Linden, 30 N.Y.2d 160, 168 [1972]; Matter of Murphy vKraemer, 16 Misc.2d 374 [Sup Ct, Nassau Co, 1959]); while others have treated them as area restrictions (Matter of Overhill Bldg. Co. vDelany, 28 N.Y.2d 449, 453-454 [1971]).
In Matter of Off Shore Restaurant Corp. v Linden (supra), the Court of Appeals addressed this dichotomy:
 "To be sure, off-street parking restrictions do not fall easily into either classification; hence, the divergence among the cases. Parking restrictions are an adjunct restriction sometimes tied to a use and at other times to an area restriction, generally depending upon the problem created by the use or the limited area involved. On this view, in determining the rules to govern variances from parking restrictions one should look to the reasons for the restrictions and then adopt rules applicable to use or area variances, whichever best meets the problem"
(30 N.Y.2d at 169; emphasis supplied).
This language directly answers the question raised in your letter: off-street parking regulations should not be classified as use or area variances, per se. Rather, their classification should depend on the circumstances presented by each case.
You have also asked whether the city may have a six member zoning board of appeals. Section 81 of the General City Law provides that a mayor or city manager may "appoint a board of appeals consisting of five members, each to be appointed for three years". At one time, section 81 also provided "[s]uch board of appeals may consist of six members if the local legislative body of any such city shall so provide, which they are hereby authorized to do by ordinance" (id.). Acting under this power, the City of Ithaca opted for the six-member board. In 1976, this part of section 81 was amended to read as follows:
 "Such board of appeals may consist of seven members if the local legislative body of any city shall so provide, which they are hereby authorized to do by ordinance" (id.; L 1976, ch 744).
You have asked whether the city may have a six-member board although section 81 currently allows only for five and seven-member boards.
Because the city's decision to have a six-member board was valid at the time it was made the six-member board, in our opinion, may be retained. Furthermore, there is a more fundamental reason why the city may have a six-member board of appeals. Under the grant of home rule power to local governments (NY Const, Art IX, § 2; Municipal Home Rule Law, §10[1]), the city has the power to enact local laws concerning its "property, affairs or government" and "[t]he powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees * * *" as long as those laws are not inconsistent with the State Constitution or a general law (1980 Op Atty Gen [Inf] 164). We believe that determining the number of members on the board of appeals is within the city's home rule power.
Article IX of the Constitution and the Municipal Home Rule Law define a general law as a law that "in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages" (Art IX, § 3[d][1]; Municipal Home Rule Law, § 2[5]; 1980 Op Atty Gen [Inf] 164). Section81 of the General City Law currently provides that a board of appeals may consist of either five or seven members. It does not, however, uniformly apply to all cities. In addition to your city's valid provision for a six-member board, the New York City Charter provides that the City's Board of Standards and Appeals consists of six members (NYC Charter, § 661). Accordingly, because that part of section 81 dealing with the size of the board does not in effect apply alike to all cities within the State, it is not a general law, and any city can supersede this provision by local law.
A similar analysis applies to the final question raised in your letter: whether the city can enact legislation which would delegate, in part, the authority to grant a variance to a design review board. Your letter proposes a design review board which would determine whether buildings conform to the zoning ordinance's design requirements. The design board's determination would then be binding on the board of appeals when it considers the application for the variance. Section 81 provides that a city's board of appeals
 "shall hear and decide appeals from and review any order, requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to paragraphs twenty-four and twenty-five of section twenty of this chapter. They shall also hear and decide all matters referred to them or upon which they are required to pass under any ordinance of the common council adopted pursuant to such two paragraphs" (General City Law, § 81[1]).
Under this provision, the power to review determinations concerning zoning is held exclusively by the board of appeals.
The proposed delegation of review power to the design board comes within the city's home rule power. In previous opinions, we have indicated that zoning regulations may be enacted by local law (1982 Op Atty Gen [Inf] 151; id., 178). We note only that because the design board's decision would be binding on the appeals board, the design board would have to ensure that its review procedures guarantee due process to those appearing before it.
In our view, section 81 is not an impediment to the enactment of such a local law. A different procedure for review of zoning determinations is found in New York City. The City's Charter provides that the Board of Standards and Appeals can only act on a matter after they receive a recommendation or a waiver from a community or borough board (NYC Charter, § 668[a][4]). Unlike the procedure described in the General City Law, this New York City procedure has an extra level of participation by community and borough boards. The provisions governing review procedure found in the General City Law, therefore, do not in terms and in effect apply alike to all cities. Accordingly, section 81 is not a general law, and, therefore, can be superseded by local laws.
We conclude that classification of restrictions and variances depends on the circumstances presented in each case; a board of appeals may consist of six members; and a city may delegate the task of determining whether a building meets design requirements to a separate board.