OPINION OF THE COURT
John R. LaCava, J.
I. BACKGROUND AND FACTS
David and Arlone Dennis (Petitioners) commenced this CPLR article 78 proceeding to challenge respondent Zoning Board of Appeals of the Village of Briarcliff Manor’s (ZBA) May 16, 1995 granting of an area variance to intervenor-respondent the Briarcliif Congregational Church (BCG).
The property that is the subject of this proceeding consists of 1.281 acres. It is improved by BCG’s parish hall, which is situated across the street from its church and rectory. Identified on the Village tax maps as section 4, plate 23, block 17, the premises is within the Village’s R-20B Single-Family Residence District which allows, among other things, private nursery schools upon the issuance of a special use permit. Petition *557 ers own and occupy a dwelling situated on an adjacent parcel of property.
In February 1995, BCC submitted a site plan application to the Planning Board of the Village of Briarcliff Manor in furtherance of its plans to lease the parish hall to the Christian Nursery School, a not-for-profit corporation. Among other things, it also submitted a special use permit application.
Upon review, the Planning Board determined that a variance from the special use permit two-acre lot requirement for privately operated nursery schools (see, Village of Briarcliff Manor Zoning Ordinance § 4 [B] [J] [10])* was required. Therefore, the Planning Board directed BCC to apply to the ZBA for the area variance.
By application dated March 17, 1995, BCC applied to the ZBA for the variance. Petitioners, and other neighboring property owners, objected to the variance. Others appeared in support. Traffic concerns were addressed, as were other issues including whether the ZBA was empowered to vary the area requirements of a special use in the first place. The variance was granted by resolution dated May 16, 1995. It was filed in the Village Clerk’s office on June 20, 1995.
After having conducted public hearings, the Planning Board granted site plan approval on June 21, 1995. Upon doing so, the Planning Board placed numerous mitigative conditions on the approved site plan. Thereafter, the Planning Board recommended to the Village Board of Trustees, which is ultimately charged with granting special use permits, that the special use permit be granted.
Upon conducting its own public hearing, the Village Board of Trustees granted BCC a special use permit on July 13, 1995. It also imposed mitigative measures.
II. CONCLUSIONS OF LAW
Addressing the affirmative defenses raised and the merits of the proceeding, I reach the following conclusions:
1. Standing
In Society of Plastics Indus. v County of Suffolk (77 NY2d 761 [1991]), the Court of Appeals reiterated the oft-stated principle that "[i]n land use matters especially, we have long imposed the limitation that the plaintiff, for standing purposes, must show that it would suffer direct harm, injury that is in *558 some way different from that of the public at large” (supra, at 774 [citations omitted]). It is still recognized, however, that "an allegation of close proximity alone may give rise to an inference of damage or injury that enables a nearby owner to challenge a zoning board decision without proof of actual injury” (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 414, rearg denied sub nom. Allen Avionics v Universal Broadcasting Corp., 70 NY2d 694). As stated, this rule is not absolute. Mere proximity may not be enough (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra; see also, Matter of Casement v Town of Poughkeepsie Planning Bd., 162 AD2d 685 [2d Dept 1990]).
While there may very well exist an absolute distance from any proposal at which the presumption of injury will never attach, generally, the determination must be made on a case-by-case basis. Since, here, we are dealing with adjacent properties, I find that petitioners have established standing to attack the issuance of the area variance issued in connection with a special use permit.
2. Statute of Limitations
The proceeding is not time barred under Village Law § 7-712-c (1). It was commenced on July 13, 1995 which is within 30 days of June 20, 1995, the date that the challenged determination is certified as having been filed in the Village Clerk’s office.
3. Mootness
The issuance of a special use permit by the Village Board of Trustees has not rendered this proceeding moot. While the Board of Trustees did not specify the subdivision under which it issued the special use permit, it expressly relied, in part, on the fact that the ZBA had issued an area variance. Additionally, it did not formally determine that BCC did not need an area variance in the first place.
4. Characterization of applicant and need for variance
The challenged determination has its genesis in BCC’s application for a special use permit to operate a not-for-profit private nursery school. Having failed to challenge that characterization below, BCC cannot now successfully argue that, in fact, the application is really for a "religious school building” for which there is no two-acre minimum lot requirement (see, Village of Briarcliff Manor Zoning Ordinance § 4 [B] [J] [1]), or that the Christian Nursery School constitutes a "preexisting conforming use” under section 4 (B) (I) of the Village *559 of Briarcliff Manor Zoning Ordinance for which no special permit is needed. BCG should have raised these issues, in the first instance, before the Village Building Inspector or the various boards before which it appeared. Finally, since neither the Planning Board nor the Board of Trustees is a party to this proceeding, the propriety of their determinations can neither be addressed nor litigated in the context of this proceeding.
5. Failure to state a cause of action
Keeping in mind that the petition must be viewed in the light most favorable to Petitioners, I find that Petitioners have sufficiently stated a cause of action.
6. ZBA authority
The principal issue raised in this proceeding is a novel one. It is whether section 7-725-b of the Village Law (L 1992, ch 694, as amended by L 1994, ch 486) empowers zoning boards of appeal to vary area requirements associated with special use permits. I conclude that it does.
The pertinent parts of section 7-725-b of the Village Law, entitled "Approval of special use permits”, provide:
"1. Definition of special use permit. As used in this section the term 'special use permit’ shall mean an authorization of a particular land use which is permitted in a zoning local law, subject to requirements imposed by such local law to assure that the proposed use is in harmony with such local law and will not adversely affect the neighborhood if such requirements are met.
"2. Approval of special use permits. The village board of trustees may, as part of a zoning local law, authorize the planning board or such other administrative body that it shall designate to grant special use permits as set forth in such local law.
"3. Application for area variance. Notwithstanding any provision of law to the contrary, where a proposed special use permit contains one or more features which do not comply with the zoning regulations, application may be made to the zoning board of appeals for an area variance pursuant to section 7-712-b of this article, without the necessity of a decision or determination of an administrative official charged with the enforcement of the zoning regulations * * *
"5. Waiver of requirements. The village board of trustees may further empower the authorized board to, when reasonable, waive any requirements for the approval, approval with modifications or disapproval of special use permits submitted *560 for approval. Any such waiver, which shall be subject to appropriate conditions set forth in the local law adopted pursuant to this section, may be exercised in the event any such requirements are found not to be requisite in the interest of the public health, safety or general welfare or inappropriate to a particular special use permit.”
Contrary to Petitioners’ position, subdivision (3) of section 7-725-b of the Village Law is not a procedural refinement granting zoning boards original jurisdiction over area variance applications only where area variance authority over special uses is specifically granted to the zoning board by the village board of trustees. By its very terms, "Notwithstanding any provision of law to the contrary”, subdivision (3) of section 7-725-b of the Village Law empowers zoning boards of appeal to grant applications for area variances that may be needed in connection with an application for a special use permit. A zoning board of appeals needs no authorization beyond that which is granted by subdivision (3).
Reference to the Bill Jacket for chapter 694 of the Laws of 1992 supports this application of the statute. In the "Summary of Provisions” portion of the Sponsor’s Memorandum of Senator Cook introducing the bill, the following statement is found: "Finally, the bill provides that in the event * * * special use permit requirements present dimensional difficulties to a particular applicant, an area variance may be applied for to the zoning board of appeals.”
In addition the following is stated in the "Statement of Support” portion of the Memorandum: "Finally, by allowing appeal to the zoning board of appeals, the bill provides applicants faced with dimensional difficulty an opportunity for administrative relief.”
The "authorized board” referred to in subdivision (5) relates to boards empowered by trustees to hear special use permit applications pursuant to subdivision (2). It is not a reference to a zoning board of appeals’ authority under subdivision (3). Subdivisions (3) and (5) deal with very distinct authorizations. Subdivision (3) addresses a zoning board’s power to grant variances from area requirements associated with special use permits. Subdivision (5), on the other hand, deals with an "authorized boardfs]” authorization to waive special use permit requirements. In contrast to a zoning board’s unconditional grant of authority under subdivision (3) to entertain area variance applications associated with special uses, an "authorized boardfs]” power under subdivision (5) to waive special permit *561 requirements must derive from further empowerment by the village board of trustees.
7. The variance
Having determined that the ZBA was empowered to entertain the application for a variance from the two-acre lot requirement of section 4 (B) (J) (10) of the Village of Briarcliff Manor Zoning Ordinance, the remaining issue is whether the ZBA’s May 16, 1995 determination can survive the remaining assertions raised in the petition.
The application before the ZBA was properly made and reviewed as one for an area variance (see, Village Law § 7-725-b; 6. ZBA authority, supra). It is not, as Petitioners suggest, an application for a use variance. Therefore, I reject Petitioners’ argument that the determination should be annulled because the ZBA failed to make required findings of fact as they relate to use variance standards (see, Village Law § 7-712-b [2]). Petitioners’ conclusory contention that the determination is otherwise arbitrary, capricious or an abuse of discretion is also rejected.
8. Conclusion
Based upon the foregoing, the petition is dismissed.

 This was incorrectly referred to as section 9 (C) (8) of the former Village of Briarcliff Manor Zoning Ordinance.