■ In the Matter of SUNRISE PLAZA ASSOCIATES, L.P., Appellant, v TOWN BOARD OF THE TOWN OF BABYLON et al., Respondents. [673 NYS2d 165] —In a proceeding pursuant to CPLR

article 78 to review (1) a resolution of the respondent Town Board of the Town of Babylon dated October 24, 1995, which, after a hearing, granted the application of the respondent International Summit Equities Corp. for a special use permit to operate a proposed restaurant, and (2) a determination by the Town of Babylon Zoning Board of Appeals dated November 16, 1995, which, after a hearing, granted the application of the respondent International Summit Equities Corp. for a variance to reduce the number of required on-site parking spaces in connection with the operation of a proposed restaurant, the petitioner appeals from an order and judgment (one paper) of the Supreme Court, Suffolk County (Floyd, J.), entered October 8, 1996, which denied the petition and dismissed the proceeding.

Ordered that the order and judgment is affirmed, with one bill of costs, payable by the appellant.

The petitioner Sunrise Plaza Associates, L.P. (hereinafter Sunrise), and the respondent International Summit Equities Corp. (hereinafter Summit) own contiguous parcels of real property located in North Lindenhurst, in the Town of Babylon, on which each operates part of what appears to be a single shopping center. The two properties are not separated by any fences or lines of demarcation, and they share parking pursuant to a cross-easement agreement. The single shopping center located on both contiguous parcels is operated under the single name of "Sunrise Plaza".

Following protracted litigation (*see, e.g., Sunrise Plaza Associates v International Summit Equities Corp.,* 212 AD2d 690; *Matter of International Summit Equities Corp. v Van Schoor,* 192 AD2d 607; *Matter of International Summit Equities Corp. v Van Schoor,* 166 AD2d 531; *Sunrise Plaza Associates v International Summit Equities Corp.,* 152 AD2d 561), Summit earned the right to erect an additional building on its property. It desired to lease that building for use as an Outback Steakhouse Restaurant.

Pursuant to Town of Babylon Code § 213-129 (G) (hereinafter the Code), the proposed restaurant was a permitted use, subject to the issuance of a special use permit. Summit submitted an application for a special use permit to the respondent Town Board of the Town of Babylon (hereinafter the Town Board). Contemporaneously therewith, Summit applied to the respondent Town of Babylon Zoning Board of Appeals (hereinafter the Zoning Board) for a variance to reduce the number of off-street parking spaces required under the Code.

At the hearing conducted before the Zoning Board, there was

evidence that despite a mathematical shortage of spaces on Summit's property as calculated pursuant to the relevant provisions of the Code, there was more than adequate parking available to accomodate restaurant patrons, because the proposed restaurant would be open at times when many of the other businesses in the shopping center would be closed. There was also evidence tending to demonstrate that the proposed tenant of the restaurant was the only entity interested in leasing the premises, and thus the award of a variance was necessary for Summit to avoid economic hardship. At the hearing before the Town Board, there was evidence that the proposed steakhouse would be a family restaurant, and would not be detrimental to the surrounding area.

On October 5, 1995, the Zoning Board voted to grant Summit's application for a parking variance. In a written decision dated November 16, 1995, the Zoning Board addressed the issue of whether the requested parking variance was more accurately characterized as an area variance or a use variance, eventually treating the application as one for a use variance, and making findings in accordance with Town Law § 267-b (2). Among other things, the Zoning Board determined that strict application of the parking requirements under the Code would cause Summit to suffer unnecessary hardship, since it would preclude the only profitable use of the new building. Furthermore, the Zoning Board determined that adequate parking existed on Summit's property even without considering the parking available on the adjacent Sunrise property, and that the character of the neighborhood would not be adversely affected. Following the Zoning Board's vote, by resolution dated October 24, 1995, the Town Board granted Summit a special use permit authorizing the operation of a restaurant, subject to certain conditions. The Supreme Court rejected the petition challenging these determinations, and we now affirm.

In considering Summit's application for a parking variance, the Zoning Board noted that variances from zoning ordinances dictating the number of off-street parking spaces required for a given commercial establishment "do not fit neatly into the categories of area variances or use variances". The Court of Appeals made a similar observation in *Matter of Off Shore Rest. Corp. v Linden* (30 NY2d 160, 169), and parking variances have been construed inconsistently both as use variances (*see, Matter of Off Shore Rest. Corp. v Linden, supra*), and as area variances in factually-analogous cases (*see, Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449; *Merrick Gables Assn. v Fields,* 143 AD2d 117; Rice, Practice Commentaries, McKin-

ney's Cons Laws of NY, Book 61, Town Law § 267-b, 1998 Pocket Part, at 126-127). Here, the Supreme Court characterized the requested parking variance as an area variance. However, we need not decide which type of variance is at issue because we find that the variance was properly granted regardless of its characterization. The evidence adduced by Summit satisfied the requirements for the granting of an area variance pursuant to Town Law § 267-b (3), as well as those governing the award of a use variance pursuant to Town Law § 267-b (2) (*see generally, Matter of Sasso v Osgood,* 86 NY2d 374).

Sunrise contends that the Town Board lacked the authority to issue a special use permit because other relevant provisions of the zoning ordinance were not met. Specifically, Sunrise argues that because Summit's proposed restaurant did not comply with the pertinent off-street parking requirements under the Code, the Town Board could not grant Summit a special use permit. We disagree.

The fundamental difference between a variance and a special use permit is that a variance permits the use of property in a manner otherwise proscribed by an ordinance, whereas a special use permit confers special authority to use the property in a manner that is expressly permitted by the ordinance (*see, Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238; *Matter of Texaco Ref. & Mktg. v Valente,* 174 AD2d 674). While a property owner is not entitled to a special use permit merely for the asking, once it is shown that the contemplated use is in conformance with the conditions imposed, the special use permit must be granted unless there are reasonable grounds for its denial, supported by substantial evidence (*see, Matter of C & A Carbone v Holbrook,* 188 AD2d 599; *Matter of Texaco Ref. & Mktg. v Valente, supra; see also, Matter of J.P.M. Props. v Town of Oyster Bay,* 204 AD2d 722). Furthermore, where, as here, "the discretion to issue special [use] permits has been reserved by the local legislative body, rather than [having been] delegated to an administrative agency * * * '[t]he only limitation upon the exercise of this discretion is that it must not be arbitrary or capricious'" (*C.K. Olivers, Inc. v Incorporated Vil. of Williston Park,* 153 AD2d 548, quoting *Matter of Buitenkant v Robohm,* 122 AD2d 791).

While it is true that, generally, there must be compliance with the requirements of a zoning ordinance before a special use permit may be granted (*see, e.g., Matter of Vergata v Town Bd.,* 209 AD2d 527), the special use permit here was issued after the Zoning Board granted the application by Summit for a variance waiving the need for strict compliance with the park-

ing requirements of the Code. Contrary to the appellant's contentions, the Town Board did not attempt to exceed its authority by waiving parking requirements, but, rather, the Town Board properly granted the special use permit *after* the Zoning Board rendered its decision granting the parking variance. There are no provisions within the Code which preclude the Town Board from issuing a special use permit to an otherwise deserving property owner who previously secured a parking variance; the two permissions are not mutually exclusive (*see, Matter of Point Lookout Civic Assn. v Rose,* 207 AD2d 454).

Furthermore, contrary to Sunrise's contention, Town Law § 274-b does not preclude the award of a special use permit after a parking variance has been obtained. Indeed, Town Law § 274-b (3) expressly provides for the issuance of a special use permit in conjunction with an area variance (*see, Matter of Dennis v Zoning Bd. of Appeals,* 167 Misc 2d 555). While that provision does not mention use variances, a special use permit generally will not be accompanied by an application for a use variance, as, by definition, the use is authorized (Town Law § 274-b [1]; *see, Matter of North Shore Steak House v Board of Appeals, supra,* at 238; *Matter of Texaco Ref. & Mktg. v Valente, supra,* at 674). A special use permit allows the owner to use the property in a manner expressly *permitted* by law (*Matter of Framike Realty Corp. v Hinck,* 220 AD2d 501). "Such a classification is tantamount to a legislative finding that, if the special exception conditions are met, such a use will not adversely affect the neighborhood" (*Matter of C & A Carbone v Holbrook, supra,* at 600). The Town Board herein properly awarded Summit a special use permit inasmuch as the proposed restaurant, operating with a parking variance, was found to be consistent with the surrounding area and would not pose a detriment thereto. Accordingly, the Town Board did not exceed its authority or otherwise conduct itself improperly, and Sunrise's arguments to the contrary are specious.

Sunrise's reliance upon *Matter of Dost v Chamberlain-Hellman* (236 AD2d 471), and the numerous other cases it cites, is misplaced, as in none of the cases cited had a variance been properly granted by the appropriate body prior to issuance of the special use permit. In short, the actions taken by the Zoning Board and the Town Board in granting Summit's respective applications were neither arbitrary and capricious nor irrational, but were supported by substantial evidence (*see, Matter of Point Lookout Civic Assn. v Rose, supra,* at 454).

We have reviewed the appellant's remaining contentions and

find them to be without merit. Rosenblatt, J. P., Miller, Ritter and Krausman, JJ., concur. [As amended by unpublished order entered May 15, 1998.]