OPINION OF THE COURT
Richard F. Braun, J.
This is a combined special proceeding, pursuant to CPLR article 78, and declaratory judgment action, pursuant to CPLR 3001. The proceeding/action concerns a significant dispute as to New York City executive branch powers regarding an important new governmental program, as between petitioner, the Comptroller of the City of New York, and the three municipal respondents. They are respondent Mayor of the City of New York, and respondents New York City Marketing Development Corporation (MDC) and New York City Department of Citywide Administrative Services (DCAS). Respondent Snapple Beverage Corporation has been included as a party, petitioner states, because, although no direct relief is sought against respondent Snapple, this court’s decision in this action/proceeding will affect the “purported contractual rights” of respondent Snapple. Petitioner wants to annul or bar implementation of a February 19, 2004 agreement between respondents MDC and Snapple, which includes a contract between respondents DCAS and Snapple (the DCAS contract). In addition, petitioner seeks to have this court declare that the agreement and the DCAS *192 contract are invalid, and may not be implemented, and that New York City Charter § 362 (a) refers to the use of all types of City-owned property, including intangible property such as intellectual property.
In his order to show cause commencing this proceeding/action, petitioner sought to temporarily restrain respondents from taking any steps to implement the agreement and the DCAS contract. After the attorneys for the parties appeared before this court on the request for the temporary restraining order, the court declined to issue one (Perrotta, Judge Declines to Temporarily Halt City’s Snapple Deal, NYLJ, Apr. 23, 2004, at 1, col 1), because petitioner did not show that he would suffer immediate and irreparable injury if respondents were not temporarily restrained, and because, even though petitioner is also a public officer, the municipal respondents were performing their statutory duties as a public officer and as divisions of a municipality, and thus a temporary restraining order could not be properly issued against them (CPLR 6313 [a]). In petitioner’s order to show cause, he also had requested a preliminary injunction, but then withdrew that request by stipulation.
Petitioner moves for summary judgment on his third request for relief declaring that New York City Charter § 362 (a) applies to all kinds of City-owned property, including intangible property such as intellectual property. Respondents Mayor, MDC, and DCAS cross-move for summary judgment dismissing “the proceeding in its entirety.” Respondent Snapple cross-moves for the same relief and for entry of judgment in favor of respondents.
Respondent Snapple did not answer the petition, as required by CPLR 7804 (c) and (d), or, if respondent Snapple did, it did not submit a copy of its answer to the court with its motion papers. Thus, respondent Snapple cannot be awarded summary judgment (CPLR 3212 [a], [b]; Krasner v Transcontinental Equities, 64 AD2d 551 [1st Dept 1978]).
The municipal respondents asserted new matter in their verified answer. Petitioner did not reply thereto, as mandated by CPLR 7804 (d). Thus, the new matter has been admitted to be true by petitioner’s failure to reply to those allegations (CPLR 3018 [a]).
The municipal respondents have initiated an innovative project with respondent Snapple, which apparently will be of great benefit to the City of New York, and its residents and taxpayers. Nevertheless, the municipal respondents still must follow proper *193 procedures under the New York City Charter, which provides for checks and balances among different parts of the executive branch of city government in order to protect the public interest. The municipal respondents have not done so, but petitioner’s challenge to the agreement and DCAS contract with respondent Snapple cannot be granted.
Respondent MDC was created in July 2003 to manage the City’s intellectual property and physical marketing assets, and to implement a comprehensive marketing, licensing, and corporate partnership initiative with private businesses, in order to generate revenue, jobs, and tourism in the City and promote the City around the world. The name New York City is one of the most highly regarded brands in the world. Young & Rubicam’s Brand Asset Valuator ranked New York City 13th out of 2,400 brands. Respondent City had never tried previously to use its brand to promote itself.
Following his appointment as the Chief Marketing Officer for the City in April 2003, Joseph M. Perello met with many potential private partners, including respondent Snapple, in order to introduce them to the City’s new marketing concept. On August 25, 2003, he attended a presentation by the marketing agent for the New York City Department of Education (DOE) of vending proposals that had been submitted to DOE. Respondent Snapple was chosen vendor by DOE to provide its schools with bottled spring water and fruit juices.
Respondent MDC soon thereafter reached agreement on its own concession with respondent Snapple without going through the competitive bidding process. Notices were then published in The City Record from November 14 to December 8, 2003 of the City’s intention to award the concession to respondent Snapple. The portion of the concession agreement in relation to installation of respondent Snapple’s vending machines was presented to the New York City Franchise and Concession Review Committee (FCRC) at a public hearing on December 8, 2003 (the parts of the agreement as to the marketing provisions were not submitted to FCRC for review and approval). After the hearing, the FCRC voted 4-2 in favor of approving the concession (petitioner, as a voting member of the FCRC, voted no).
The executed concession agreement was sent to petitioner’s office to be registered on or about February 20, 2004. He objected to the registration of the agreement by March 18, 2004 letter to respondent Mayor, who by letter, dated April 12, 2004, directed petitioner to register the agreement.
*194 Under the subject agreement, respondent Snapple will be the exclusive provider to the City of iced tea, bottled water, and chocolate drinks for five years in approximately 3,500 vending machines and concessions on City-owned or City-controlled properties, or other public entities with which the City has or will reach agreements. Respondent Snapple has agreed to pay the City 30% of the retail price of beverages sold in vending machines (minus sales taxes), lxh% of respondent Snapple’s net sales price from Snapple products sold on city properties to new customers, and “City Marketing Initiative” payments of $4,500,000 in the first year of the contract and up to $7,500,000 in the last year thereof. Respondent Snapple will also provide an average of $12,000,000 per year marketing and promotional value in promoting the City and its brand outside of the City through respondent Snapple’s own initiatives. Respondent MDC will provide respondent Snapple with an annual marketing and promotional initiative consisting of City-owned and/or City-controlled media events, sponsorship, advertising, and promotions. The City and/or respondent MDC have already discussed with respondent Snapple its sponsorship of world class award shows in the City; a national promotion, including a contest, through cable television, which would promote the City as a premier travel destination; the development and redevelopment of several parks; a concert series showcasing local city artists; and promotional programs in New York City to support small businesses here.
Where a contract is let by other than competitive sealed bidding, under New York City Charter § 313 and 12 RCNY 1-11, before the contract is filed with petitioner for registration, respondent Mayor must certify that the procedural requirements for the soliciting and awarding of the contract were met (NY City Charter § 327 [a]), and the Corporation Counsel of the City of New York Law Department has to certify that each agency proposing to award a contract has legal authority to do so. Petitioner objected by his March 18, 2004 letter to the registration of the subject agreement. Respondent Mayor and the Corporation Counsel responded to petitioner’s objections thereafter. As petitioner points out in his argument in this proceeding/ action, respondent Mayor did not certify the agreement before it was filed, and the Corporation Counsel did not properly certify the agreement before the filing.
The Corporation Counsel’s certification before the agreement was filed was only “as to form.” Contrary to the municipal *195 respondents’ position that that was a proper certification, it was not. It does not comply with the substantive certification requirement of New York City Charter § 327 (b). Moreover, petitioner submitted copies of many previous certifications by the Corporation Counsel that were both certified as to form and as to each agency’s having legal authority to award the contract involved. That respondent Mayor and the Corporation Counsel may have properly certified the agreement by their letters after the agreement was filed is of no moment because at that point the certifications were too late, under New York City Charter § 327 (a) and (b).
However, in his March 18, 2004 letter, petitioner only objected to registration of the agreement on two grounds: (1) that the process by which respondent Snapple was awarded the agreement was corrupted by officials of respondent MDC being inappropriately involved in the prior awarding of the DOE contract, which allegedly resulted in a preordained decision to choose respondent Snapple for the subject City-wide agreement, and (2) that the certifications by respondent Mayor and the Corporation Counsel were improper because only the vending machine portion of the agreement was submitted to the FCRC for review and approval rather than the whole agreement being submitted. Petitioner states in his objection letter that “the Mayoral certification that the City’s required procedures for soliciting the Citywide Agreement were followed as well as the Law Department’s certification that the agency had the legal authority to award the contract are improper.” Petitioner knew or should have known, before the filing of the agreement, that respondent Mayor did not certify the agreement and that the Corporation Counsel did so improperly because he only certified it as to form. Thus, petitioner has waived those objections he now raises for the first time in this proceeding/action (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446 [1984]).
New York City Charter § 328 (a) provides that a contract cannot be implemented until a copy of the contract has been filed with petitioner, and the sooner occurs of either petitioner’s registering the contract or 30 days having elapsed from the date of the filing, unless petitioner has a ground for not registering the contract under section 328 (b) or files an objection pursuant to section 328 (c). The only ground pertinent here under section 328 (b) is that respondent Mayor and the Corporation Counsel have not certified the contract as required under New York City *196 Charter § 327. Petitioner waived that ground to the extent stated above. As to petitioner’s argument that the certifications were improper because only part of the agreement was submitted to the FCRC for review and approval, and thus the certifications were based on improper procedures and illegal authority, the entire agreement was filed, and the Charter provision does not allow petitioner to raise an objection to the certifications that attacks only part of the complete filed contract.
As to the objection by petitioner as to the possibility of corruption in the awarding of the agreement, he is wrong that he can block the implementation of the agreement on that ground. New York City Charter § 328 (c) gives petitioner the important role in protecting the City, and its residents and taxpayers, of bringing to the attention of respondent Mayor any beliefs of corruption that the petitioner may have, by objecting in detail on that ground. That New York City Charter provision goes on to provide that respondent Mayor must respond to petitioner’s corruption objections in writing in a specified manner, and further provides that respondent Mayor may require that the contract be registered over the objections of petitioner. Section 328 (c) in addition states that the response by respondent Mayor shall not be the basis for any further objections by petitioner. Clearly, contrary to petitioner’s arguments, his corruption objection to the registration of the agreement is not a ground upon which he can refuse to register the contract, where respondent Mayor complied with his obligations under section 328 (c) (see Matter of Giuliani v Hevesi, 276 AD2d 398, 400 [1st Dept 2000]).
Petitioner asserts that the agreement cannot be implemented because it does not comply with New York City Charter § 365 (b). That provision requires that every agreement for a concession contain a binding promise that the grantee shall permit the placement or display of certain public health messages, pursuant to Administrative Code of the City of NY § 17-621, where tobacco advertisements appear on any property subject to a concession, and pay the costs for the messages. New York City Charter § 365 (b) is only a permissive provision as to those public health messages, and does not mandate that the City require that such public health messages be placed on all concession properties. Furthermore, the agreement’s exhibit B, which is entitled “requirements during the term of the license,” prohibits respondent Snapple from selling and/or advertising any tobacco products. Finally, New York City Charter § 328 does not include a violation of section 365 (b) as a ground for refusing to register a contract.
*197 The municipal respondents assert an affirmative defense under the statute of limitations and cross-move for summary judgment on that ground. The last actions that petitioner challenges were the filing of the contract with him on February 20, 2004, and on April 12, 2004 respondent Mayor’s overruling of petitioner’s objections and directing petitioner to register the contract. That is when the municipal respondents’ actions regarding the agreement became final for purposes of the statute of limitations (see Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998]). This proceeding/action was commenced by the filing of the verified petition on April 21, 2004 (CPLR 304). Thus, the proceeding was commenced within the four-month statute of limitations, which applies to petitioner’s article 78 claim (CPLR 214 [1]), and to the declaratory judgment claim that is the second request for relief, which grows out of the article 78 cause of action (see Solnick v Whalen, 49 NY2d 224, 229 [1980]). Petitioner’s third cause of action, which is also for declaratory relief, relates to the dispute between the municipal respondents, who assert that “concession” in the subject agreement with respondent Snapple and in prospective agreements with other entities under the respondent MDC initiative only includes real property under the definition of “concession” in New York City Charter § 362 (a), and petitioner, who contends that the definition is broader. The date of the statute of limitations has not even fully commenced on the third claim because the last part of that claim would occur in the future.
The municipal respondents also raise a defense of mootness in their verified answer. They contend that the certifications by respondent Mayor and the Corporation Counsel after the filing of the agreement rendered moot the objection of petitioner as to their failure to comply with the requirements of New York City Charter § 327 (a) and (b). As discussed above, those certifications were too late. Thus, the mootness defense is not valid (cf. Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980] [where the subject of the article 78 proceeding had long ago concluded, the proceeding was moot, and no exception was found to the mootness doctrine]).
The municipal respondents contend that the controversy between the parties is not justiciable, as required by CPLR 3001 (Cherry v Koch, 126 AD2d 346, 350 [2d Dept 1987]). To obtain a declaratory judgment, the parties must have a concrete dispute between them (see Matter of Hunt Bros, v Glennon, 81 NY2d 906, 910 [1993]). The contention of nonjusticiability relates to *198 the definition of “property” under New York City Charter § 362 (a). The municipal respondents have made it clear that this controversy between them and petitioner expectedly will reoccur in the future, by intentionally only submitting to the FCRC the portions of the agreement that relate to the vending machines on real property and not the portions that relate to intellectual property marketing, by taking the position that they had no obligation to submit the latter, and by evidencing their intention to use this new marketing initiative as expansively as possible hereafter. If the controversy does reoccur, again a temporary restraining order would not be available (see discussion above). It would not be in the interest of the municipal respondents, petitioner, any prospective selected vendor(s), and the city residents and taxpayers to have a contract implemented in the future only to have the agreement declared invalid and its implementation undone. Thus, there remains a justiciable controversy between petitioner and the municipal respondents, and any determination that this court makes will not be merely advisory (see New York Pub. Interest Research Group v Carey, 42 NY2d 527, 529-530 [1977]). However, the justiciable controversy here is not as broad as petitioner propounds, but it is only as to whether the use of the word “property” in the definition of “concession” under New York City Charter § 362 (a) includes intellectual property, as is at issue in this proceeding/action.
New York City Charter § 362 (a) defines “concession” as “a grant made by an agency for the private use of city-owned property for which the city receives compensation other than in the form of a fee to cover administrative costs, except that concessions shall not include franchises, revocable consents and leases.” Numerous other provisions of the New York City Charter use the word “property” limited as to type of City-owned property by an adjective, such as “real” or “personal.”* A word in a statute should be construed according to its ordinary meaning and import (McKinney’s Cons Laws of NY, Book 1, Statutes § 232). Generally, the unambiguous language of a statute is determinative (Riley v County of Broome, 95 NY2d 455, 463 [2000]). The plain meaning of a statute has to be discerned *199 without interpreting it in an unnatural or forced manner (Matter of Theroux v Reilly, 1 NY3d 232, 240 [2003]). When broad, general language is used in a municipal ordinance, “it must be assumed that there was a purpose in such use” (City of Buffalo v Roadway Tr. Co., 303 NY 453, 460 [1952]). In enacting the New York City Charter, the term “property” in section 362 (a) easily could have been modified by putting “real” before it to so limit it. That was not done. The word “property” should not be construed to be restricted to real property, as respondents contend, but rather should be interpreted under its expansive common meaning to include intellectual property. Thus, a declaration to that effect is appropriate. One practical effect is that the FCRC, when reviewing future contracts as to concessions, will have to do a broader review, and the members of the FCRC, including petitioner, will have more input into the review and approval process for concessions, which is to the public benefit.
Therefore, the petition has been granted by this court’s separate July 25, and 29, 2004 decision and order to the extent of declaring, pursuant to petitioner’s third request for relief, that New York City Charter § 362 (a) includes the use of City-owned intellectual property. By a second July 25, 2004 decision and order of this court, the motion by petitioner was granted to the extent of awarding him summary judgment to the above extent. In that decision and order, the cross motion by the municipal respondents was granted not to the extent of awarding them summary judgment dismissing petitioner’s second request for relief, as requested by the municipal respondents, but rather declaring that the DCAS contract and the agreement are valid, and may be implemented (see Lanza v Wagner, 11 NY2d 317, 334 [1962], appeal dismissed 371 US 74 [1962], cert denied 371 US 901 [1962]). The cross motion by respondent Snapple was denied.

 For example, “real property” is found in New York City Charter § 362 (d), as well as in New York City Charter §§ 153, 155, 156, 163, 164, 164-a, 164-b, 197-c, 197-d, 202, 203, 204, 210, 220, 224, 239, 265-a, 381, 382, 384, 459, 521, 811, 824, 1145, 1150, 1202, 1504, 1505, 1506, 1507, 1508, 1511, 1515, 1517, 1518, 1519, 1520, 1521, 1527, 1802, 1804, 2604, 3020, and 3021. Other New York City Charter provisions state “personal property.”