=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 150
In the Matter of Colin Realty
Co., LLC,
             Appellant,
        v.
Town of North Hempstead, et al.,
             Respondents.


            Robert M. Calica, for appellant.
            Simone M. Freeman, for respondents.
            Bruce W. Migatz, for respondents.


READ, J.:

        This appeal calls upon us to revisit our decisions in

Matter of Overhill Bldg. Co. v Delaney (28 NY2d 449 [1971])

(Overhill) and Matter of Off Shore Rest. Corp. v Linden (30 NY2d

160 [1972] [Scileppi, J., dissenting]) (Off Shore), which both

dealt with variances from the off-street parking requirements of

zoning ordinances.  We now hold that a zoning board of appeals

                          - 1 -

should evaluate requests for off-street parking variances by applying the standards for an area variance so long as the property is intended to be used for a purpose permitted in the zoning district.  To the extent Off Shore suggests otherwise, it should no longer be followed and is overruled.

I.

On February 4, 2011, Manhasset Pizza LLC (Manhasset Pizza) and Fradler Realty Corporation (Fradler) (collectively, the applicants) sought approval from the Town of North Hempstead Board of Zoning and Appeals (the ZBA or the Board) to place a 45-seat, full-service, dine-in restaurant in a storefront situated on Plandome Road in Manhasset, New York.  Vacant since 2007, this storefront had most recently housed a retail gift shop; it is one of five storefronts in a one-story brick building constructed by Fradler in 1939 on property purchased the previous year.  Restaurants are permitted in the Business A district in which the building is located, subject to the issuance of a conditional use permit.

In 1939, the Code of the Town of North Hempstead (the Town Code) did not obligate Fradler to provide off-street parking or loading/unloading areas for the building.  By 2011, however, the Town Code imposed off-street parking requirements and standards throughout the Town.  Specifically, the Town Code called for the restaurant, as proposed, to supply 24 off-street parking spaces (one space per every four seats for patrons, plus

additional spaces as specified in the Code to account for
employees and takeout service) and one off-street
loading/unloading area.  Two metered municipal parking lots are
located near the property, and there is on-street parking along
Plandome Road.

The ZBA held a hearing on the application on March 23,
2011.  By decision dated and adopted on May 25, 2011, the Board
granted the conditional use permit, subject to certain
conditions, and the requested variances.  Treating the
application as a request for area variances, the Board concluded
that the benefit to the applicants of granting variances from the
Town Code's parking and loading/unloading restrictions outweighed
the detriment imposed on the community (see Town Law § 267-b [3]
[b]).  The Board noted that "[t]he subject storefront is located
in a preexisting non-conforming building . . . originally
developed with no parking[; therefore, a] parking variance is
necessary to operate any business at the premises."
Additionally, the parking analysis submitted by the applicants'
traffic engineer indicated that "ample, if not excess, parking"
was available in the vicinity.  The ZBA observed further that a
restaurant was "in harmony with the surrounding properties" and
"consistent with the character of the community," which
predominantly consisted of retail, office and food uses.

On June 23, 2011, Colin Realty, LLC (Colin), the owner
of a multi-tenant retail building next to the Fradler property,

commenced this hybrid CPLR article 78 proceeding/declaratory judgment action against the Town of North Hempstead (the Town), the ZBA, certain members of the ZBA, Manhasset Pizza, and Fradler.  Colin sought to annul the ZBA's determination and obtain a judgment declaring, in effect, that the proposed restaurant required a use rather than an area variance from the Town's parking and loading/unloading restrictions.  The petition/complaint alleged that existing public parking was "overwhelmed" and inadequate to accommodate the applicants' proposed "high volume use."

On February 14, 2012, Supreme Court denied the petition and dismissed the proceeding/action on the merits, concluding that the ZBA had "rationally engaged in the statutorily mandated balancing test by . . . weighing the benefit to the applicant against the detriment to the health, safety and welfare of the neighborhood or community if the variance is granted" (internal quotation marks omitted) (2012 NY Misc LEXIS 898, *9 [Sup Ct, Nassau County 2012]).  Citing Overhill and appellate cases following Overhill's reasoning, the judge rejected Colin's argument that use variances were necessary to excuse the applicants from complying with the Town Code's provisions for off-street parking and loading/unloading.  And the court agreed with the applicants that a use variance was not necessary for the conditional use permit because "the proposed restaurant was not a non-conforming and/or prohibited use within the meaning of the

Town Code" (id. at *15).  Indeed, the judge added, since restaurants were conditionally permitted in the zoning district, they were "deemed presumptively consistent with the basic character of the surrounding community" (id. at *16).

Colin appealed, and on June 5, 2013, the Appellate Division affirmed.  Relying on Overhill and several of its own prior decisions, the court held that the "ZBA properly determined that the variances pursuant to which Manhasset Pizza sought relief from the parking and loading-zone requirements were to be treated as applications for area variances under the scheme of the Town Code" (107 AD3d 708, 709 [2d Dept 2013]).  Further, "[i]nasmuch as the ZBA balanced and weighed the appropriate statutory factors, and based its findings on objective facts appearing in the record, its determination to grant the requested area variances was rational and not arbitrary and capricious" (id. at 710).  The Appellate Division considered Colin's remaining contentions to be without merit.  We granted Colin permission to appeal on September 3, 2013 (21 NY3d 864 [2013]), and now affirm.

## II.

Town Law § 267 (1) defines and distinguishes between area and use variances as follows:

> "(a) 'Use variance' shall mean the authorization by the zoning board of appeals for the use of land <u>for a purpose which is otherwise not allowed or is prohibited</u> by the applicable zoning regulations.
>
> (b) 'Area variance' shall mean the authorization by the

zoning board of appeals for the use of land <u>in a manner which is not allowed by the dimensional or physical requirements</u> of the applicable zoning regulations" (emphases added; <u>see also</u> Village Law § 7-712 [1]; General City Law § 81-b [1]).

To obtain a use variance, the applicant must demonstrate to the zoning board of appeals that "applicable zoning regulations and restrictions have caused unnecessary hardship" (Town Law § 267-b [2] [b]).  This imposes a heavy burden on the applicant, who must establish that

> "for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created" (<u>id.</u>; <u>see also</u> Village Law § 7-712-b [2]; General City Law § 81-b [3]).

In making a determination whether to grant an area variance, the zoning board of appeals must "take into consideration the benefit to the applicant if the variance is granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant" (<u>id.</u> § 267-b [3] [b]).  To make this determination, the board weighs

> "(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will

have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance" (id.; see also Village Law § 7-712-b [3]; General City Law § 81-b [4] ).

We have not discussed the classification of variances from off-street parking requirements since our decisions in Overhill and Off Shore, handed down in 1971 and 1972 respectively, or 20 years before the definitions of and criteria for evaluating use and area variances were regularized by statute, as described above (see L 1991, ch 692, eff. July 1, 1992; see also L 1992, ch 248; L 1993, ch 208, eff. July 1, 1994]). The distinction between the two types of variance, initially created by decisional law, has always been important, as the pre-1992 standard for a use variance was, as remains the case under statute, clearly harder to satisfy than the test for an area variance, although the latter was plagued by confusing and often contradictory decisions. As we explained in Matter of Sasso v Osgood (86 NY2d 374, 381 [internal citations omitted]),

> "[w]ithout any legislative guidance defining the requirements for an area variance, the courts began to develop a list of considerations to be applied under Town Law former § 267 . . . [T]hese criteria came to be know as the 'practical difficulties' test. The criteria notwithstanding, however, precise and concise definition of 'practical difficulties' never emerged from the case law. In particular, it remained unclear whether a showing of 'significant economic injury' was part of the 'practical difficulties' test."

> Matter of Fulling v Palumbo (21 NY2d 30 [1967]), which

figured prominently in Overhill and Off Shore, articulated the
"significant economic injury" test.  In Matter of Doyle v Amster
(79 NY2d 592, 596 [1992]), we partially overruled Fulling, which
was subsequently fully superseded by statute (see Sasso, 86 NY2d
at 383 [chapter 692 of the Laws of 1991 establishes the criteria
for an area variance, and applicants no longer "need [to] show
'practical difficulties' as required under Town Law former § 267
and prior case law"]).

        Here, Colin faults the lower courts for relying on
Overhill, and claims that Off Shore (which both those courts
cited, preceded by the signal "cf.") obligated the Board to apply
the criteria for a use variance when considering whether to grant
the applicants' request for relief from the Town Code's parking
and loading/unloading restrictions.  Colin claims this is the
case because Off Shore "laid down the rule that the determinative
factor . . . is whether the local code imposes the off-street
parking requirement based on area/square footage [calling for an
area variance] or based on the intensity of the use [calling for
a use variance]."[1]  We turn first, then, to an examination of
Overhill and Off Shore.

_____

        [1]The Town Code's off-street loading/unloading requirements
are based on area/square feet; i.e., one loading area for each
10,000 square feet for retail/warehouse uses, and one loading
area for each 40,000 square feet for office/hotel/all other
business uses.  Thus, even under Colin's reading of Off Shore,
the ZBA properly applied the test for an area variance to the
applicants' request for a variance from off-street
loading/unloading requirements.

<u>Overhill</u>

In <u>Overhill</u>, a four-story building, located in a Business A district in the Village of Scarsdale, was completed in early 1955 as part of a combination office and apartment structure. At the time of the structure's construction, local zoning regulations did not mandate off-street parking for office buildings, although an indoor parking garage was built, in part, it would appear, to comply with then-applicable parking requirements for apartment houses. This garage occupied the structure's entire basement and part of the ground floor of the office building. The zoning ordinance was subsequently amended to require one off-street parking space for each 150 square feet of floor area of buildings used for (non-retail) business purposes and existing prior to November 1, 1959. The parking garage in the basement and ground floor of the office building supplied fewer spaces (117) than the amendment called for (306).

In 1970, Overhill Building Company (Overhill), the office building's owner,[2] applied for a permit to convert a portion of existing ground-floor garage space to business office use, thereby reducing the size of the garage. The building inspector denied the permit on the ground that the proposed modification did not comply with zoning regulations. Overhill then filed an appeal or application for variance with the zoning

---

[2]By this time, the apartment house was under separate ownership; however, entry to the apartment building's basement garage was via the office building's basement garage.

board of appeals.

At the ensuing hearing, Overhill submitted proof that the alteration would yield an additional $25,000 in annual income (the New York Telephone Company had essentially signed up to lease the new office space to be created); that the garage had never been occupied to its full capacity and would continue to be adequate even after completion of the alterations (this was apparently not disputed); and that none of the buildings in the district complied with the ordinance's parking regulations (also undisputed).  In its findings of fact, the zoning board of appeals determined that the requested variance, if approved, would require an additional 12 parking spaces and would also reduce the existing garage area by 12 spaces.  The board therefore denied the application, reasoning that the requested variance would enlarge a nonconforming use and that the hardship, being self-created, was not entitled to relief.

Overhill commenced a CPLR article 78 proceeding against the zoning board of appeals and the building inspector, seeking to annul the board's determination and compel issuance of the requested building permit.  Supreme Court concluded that because Overhill asked for a building permit to convert garage space to office space, a use permitted in the district, the variance sought was properly treated as an area rather than a use variance.  Applying Fulling, the judge decided that Overhill was entitled to the area variance and issuance of the building

permit.  The Appellate Division affirmed without opinion, with
two Justices dissenting (Matter of Overhill Bldg. Co. v Delany,
35 AD2d 1012 [2d Dept 1970]).

On appeal to us, the zoning board of appeals contended
that the lower courts had "erroneously treated [the] litigation
as a matter involving an area variance," and urged us to "adopt
the view that [Overhill] sought a use variance and . . . since
the law does not generally sanction enlargements of nonconforming
uses, no variance should be granted" (Overhill, 28 NY2d at 453
[internal citation omitted]).  We disagreed, explaining that

> "when courts are faced with applications for variances
> from zoning regulations which prescribe the number of
> off-street parking spaces required for a building, the
> rules relating to area variances obtain . . . In the
> present case [Overhill] is seeking to convert . . .
> garage space to office space, which is a permitted use.
> Consequently, while the change in this case is not
> strictly one of area, the variance is to be treated as
> an area variance . . . Stated differently, [Overhill's]
> proposed alteration would conform to approved uses for
> Business A zones.  However, since it is governed by an
> off-street parking requirement, a limitation on floor
> area, cases such as Matter of Otto v Steinhilber
> [articulating criteria for obtaining a use variance],
> are inapposite and the instant controversy must be
> resolved according to the law of area variances" (id.
> at 453-454).

We nonetheless reversed, based on application of
Fulling, which held that "although financial hardship may satisfy
the property owner's initial burden, once the zoning authorities
show that the ordinance promotes public health, safety or
welfare, mere financial loss is insufficient to require a
variance" from area restrictions (id. at 454).  While Overhill

had met its initial burden ("significant economic injury" as articulated in Fulling), the purpose of the parking regulations was to promote public safety by relieving traffic congestion, and the zoning authorities could have "reasonably determine[d] that further increases in the amount of square feet devoted to business use would be likely to result in traffic problems" (id. at 457).  As a result, we opined, the zoning board of appeals' decision to deny the variance could "only be considered arbitrary if the hardship caused deprive[d] the property owner of any use of the property to which it [was] reasonably adapted [and] mere financial loss [was not] hardship within the meaning of this rule" (id.).  Here, all Overhill had shown was "mere financial loss" -- i.e., $25,000 in lost rental income; it had "not been deprived of the use of its property [which] remain[ed] a valid apartment and business use" (id.).

Off Shore

In January 1969, Off Shore Restaurant Corporation (Off Shore), which operated a cocktail lounge in leased premises in the City of Long Beach, purchased nearby property, a parcel measuring 40 feet by 90 feet and virtually entirely occupied by a building with a store in front and an apartment in back.  At the time, the store was a delicatessen and restaurant with seating capacity for approximately 62 people, which had been in business at that location for about 12 years.  Off Shore intended to open and operate a restaurant and cocktail lounge in the building.

The building was situated in a Business B district;
when it was erected in 1922, zoning regulations did not mandate
off-street parking and none was provided.  By the 1950's, though,
the local municipal code mandated minimum off-street parking in
all zoning districts in connection with the "alteration, erection
or increase by units or dimensions of any building or structure."
For "restaurants, night clubs, tea rooms, lunch counters or the
like," the code required one off-street parking space for each
four seats, plus such additional spaces for employee parking as
the building commissioner deemed necessary.  The code also
specified in a related section that "[w]henever there is a change
in the number of employees or business visitors or in the lawful
use of the premises or in any other unit of measurement
specified" for off-street parking requirements, and the change
created a need to increase the number of spaces by more than 15%,
this additional off-street parking had to be provided.

In December 1969, Off Shore applied to the building
commissioner for a permit to allow it to remodel the building's
interior by installing wall paneling, new kitchen equipment and a
bar, and modernizing the bathrooms.  No structural changes or
additions were contemplated; the building's layout was to remain
the same.  Off Shore planned to increase restaurant seating
capacity from 62 to 85, though.  The commissioner denied the
permit upon the ground that Off Shore's proposed alterations were
subject to and did not comply with the code's parking

regulations, described above.

Off Shore appealed, and also applied to the zoning board of appeals for permission to alter the premises for use as a restaurant and/or cocktail lounge or, in the alternative, for a waiver of the off-street parking requirements.  Off Shore made two arguments; first, that the code exempted nonconforming buildings from the parking restrictions so long as no structural alterations were made or additions built and the intended use was permitted in the district; second, that, in any event, it had made a showing of practical difficulties, justifying an area variance.  With respect to the first argument, Off Shore relied on the code's saving provision.

The zoning board of appeals determined that the zoning ordinance obligated Off Shore to provide off-street parking space for 24 cars, and denied the application.  The findings of fact emphasized that Off Shore's building abutted a heavily traveled thoroughfare near a residential district, and that the use of the premises for a restaurant and cocktail lounge without off-street parking threatened to exacerbate existing traffic congestion and the shortage of available parking spots.  Additionally, the board opined that Off Shore had submitted no evidence to justify the granting of a variance, and that "practical difficulties and unnecessary hardships would not result in carrying out the strict letter of the ordinance."

Off Shore commenced a CPLR article 78 proceeding

against the building commissioner and the zoning board of
appeals, seeking to compel the commissioner to issue a building
permit that did not mandate compliance with the code's parking
regulations, and to annul the board's determination to the extent
it affirmed the commissioner's decision and denied Off Shore's
application for a variance.  Supreme Court sided with Off Shore.
The judge held that the building was exempt from the code's
parking regulations because its contemplated use was not
prohibited in the zoning district and no structural additions or
alterations were to be made.  The Appellate Division affirmed
without opinion, with two Justices dissenting (Matter of Off
Shore Rest. Corp. v Linden, 36 AD2d 948 [2d Dept 1971]).

On appeal to us, Off Shore again urged principally that
its proposed alterations were exempt from the code's parking
restrictions by virtue of the saving provision.  We reversed,
with one Judge dissenting, holding that

> "[t]he seating capacity of the proposed cocktail lounge
> would be over 15% greater [than the capacity of the
> preexisting delicatessen-restaurant], thus triggering a
> zoning provision applicable to pre-existing uses,
> requiring additional off-street parking.  Denial of a
> variance was not arbitrary since there remained a
> reasonable use of the property" (Off Shore, 30 NY2d at
> 162).

The majority considered Off Shore's interpretation of
the saving provision to be incompatible with the code's general
provisions regulating changes in use and issuance of use permits,
which forbade use of any building that had been altered or
erected or a change in the use carried out in a building absent a

use permit; and specified that a use permit would not be issued
unless the building and use complied with all code requirements.
According to the majority, these provisions "clarif[ied] any
ambiguities" in the saving provision and mandated "complete
conformity" with the code, including its parking regulations,
whenever any change in use occurred, even a change between uses
permitted in the zoning district, as happened here (id. at 166).
The increase in seats from 62 to 85 (not including new
accommodations at the bar) exceeded the ordinance's 15%
threshold, triggering the need, the majority estimated, for
approximately eight additional off-street parking spots.  Since
Off Shore's application did not provide for any off-street
parking, the zoning authorities had properly denied the permit.

The majority then turned to Off Shore's request, in the
alternative, for a variance.  Observing as an initial matter,
that "standards governing the zoning board's discretion to grant
or deny variances are found in case law," the majority
acknowledged that parking restrictions involve both use and area.
In the paragraph that lies at the heart of the dispute in this
case, the Off Shore court continued as follows:

> "To be sure, off-street parking restrictions do
> not fall easily into either classification; hence, the
> divergence among the cases.  Parking restrictions are
> an adjunct restriction sometimes tied to a use and at
> other times to an area restriction, generally depending
> upon the problem created by the use or the limited area
> involved.  On this view, in determining the rules to
> govern variance from parking restrictions one should
> look to the reasons for the restrictions and then adapt
> rules applicable to use or area variances, whichever

best meets the problem.  Illustratively, a parking restriction may be required because the building lots are too small, or on the other hand, because the use of the building regardless of lot size will cause many vehicles to be brought to the site.  Most often, the parking restriction will relate to uses, and the ordinance by requiring off-street parking for certain uses by a stated formula will so indicate, as in this case.  In others, the parking restriction may be related by the ordinance to the area.  That was the situation in [Overhill] where the requirement for off-street parking was defined in terms of the office space available in the subject building.  The Overhill court, looking to [Fulling], with some qualifications it is true, applied rules applicable to area variances but also spoke of the test as one which was not met unless the owner was left with no reasonable use for his property.  In this case, applying the rules applicable to use variances and in accord with the analysis in the Overhill case, it is material that [Off Shore] has made no showing that the property cannot yield a reasonable return without increasing the burden on street parking in violation of . . . the zoning ordinance.  Indeed, there is no indication that the present use of the property as a delicatessen is not profitable.  No hardship is shown except that a desired expansion is not available, and that is exactly what the policy in terminating nonconforming uses is designed to control" (id. at 169-170).

The dissenting Judge was not persuaded that "a permit should not issue simply because of a technical change from a delicatessen to a liquor-dispensing restaurant, even though both are permitted uses in the business zone" (id. at 170).  He agreed with the courts below that absent an addition or structural alteration of the building, Off Shore's proposed use was exempt from the code's parking restrictions.   The dissenting Judge then added that, if he could agree that the code's off-street parking provisions did, in fact, apply to Off Shore, he would conclude that the zoning board of appeals had properly denied the

variance, apparently based on Overhill (which he had authored)
and Fulling.  He chided his colleagues, however, for seeming to
"retract from . . . [Overhill] where [the Court] recently
postulated that off-street parking requirements take on the
semblance of limitations on area and as such must be resolved
according to that body of law" (id. at 170-171).

III.

Colin bases its entire case on the paragraph from Off
Shore quoted in full above.  While far from clear, that
paragraph, read in the context of the Overhill and Off Shore
decisions, seems to say the following:

> (1) A parking restriction may relate to use or to area
> in the particular locality, depending upon "the problem
> created by the use or the limited area involved."
>
> (2) In determining whether a variance from an off-
> street parking requirement is an area or use variance,
> "one [must] look to the reasons for the restrictions
> and then adapt rules applicable to use or area
> variances, whichever best meets the problem." "One"
> seems to refer to the zoning authorities, but may also
> refer to a court attempting to glean the zoning
> authorities' intent.  In Off Shore itself, the majority
> interpreted the code to require a use permit for any
> change in use, even a change from one to another
> permitted use, and to obligate the applicant for such a
> use permit to comply with all code requirements in
> effect at the time of the application.  Thus, the
> majority seems to have reasoned that this particular
> locality, by including especially stringent use permit
> provisions in its code, expressed a strong policy
> preference to speed up elimination of nonconforming
> uses, a goal "best [met]" or fulfilled by treating
> variances from off-street parking requirements as use
> rather than area variances.
>
> (3)  In any event, the "reasons for the restrictions"
> will generally be apparent from the face of the
> ordinance, as the restriction will either relate to

use, by stating a formula for certain uses (as in <u>Off Shore</u>); or, contrariwise, to area, by defining the restriction in terms of the space in the building (as in <u>Overhill</u>).

(4)  Even though the <u>Overhill</u> court considered the parking restriction to be an area variance, it held that the variance was properly denied because, applying the <u>Fulling</u> test, the owner (Overhill) could not show that it was "left with no reasonable use for [its] property."

(5)  Whether applying the "rules applicable to use variances" (at the time, the undue hardship rule as articulated in <u>Steinhilber</u>) or "the analysis of <u>Overhill</u>" (the <u>Fulling</u> test), Off Shore did not make the showing necessary for a variance from the code's off-street parking requirements.

This exegesis prompts several thoughts.  First, since Off Shore was not entitled to a variance even under the more lenient test for an area variance, everything the majority in <u>Off Shore</u> said about use variances was extraneous to the decision and might be considered dictum.  But these remarks were not unconsidered.  To the contrary, the majority seems to have gone out of its way to try to narrow the Court's then very recent decision in <u>Overhill</u>, as the dissenting Judge complained.  In any event, the distinctions that the <u>Off Shore</u> majority sought to make are illusory.  Off-street parking requirements are routinely tied to and vary with a use.  In <u>Overhill</u>, the use was a (non-retail) business; in both <u>Off Shore</u> and this case, the use was a restaurant.  And parking restrictions are generally amenable to expression in terms of either a formula or space, or some combination thereof.  For example, here the Town Code called generally for a restaurant to provide one off-street parking

space for every four seats for patrons; but the limitation could just as easily have been formulated in terms of one parking spot for every so many square feet of floor area devoted to patron use.

Finally, and whether dictum or not, Off Shore's declarations about use variances for off-street parking requirements have effectively been superseded by statute. Off Shore requested a building permit to make alterations in connection with a proposed change from one use permitted in the zoning district (delicatessen and restaurant) to another (cocktail lounge and restaurant). But as of July 1, 1994, General City Law § 81-b (1) has defined a "use variance" as an authorization for the use of land for a purpose "otherwise not allowed or . . . prohibited" in the zoning district; and an "area variance" as an authorization to use land "in a manner which is not allowed by the dimensional or physical requirements" of the zoning regulations (see also Town Law § 267 [1]; Village Law § 7-712 [1]). Off-street parking requirements, while differing depending on use, regulate how the property's area may be developed, akin to minimum lot size or set-back restrictions. Accordingly, area variance rules apply to requests to relax off-street parking requirements so long as the underlying use is permitted in the zoning district; use variance rules prevail only if the variance is sought in connection with a use prohibited or otherwise not allowed in the district (see generally, Terry Rice,

Practice Commentaries, McKinney's Cons Laws of NY, Book 61, Town Law § 267-b at 294-295).

In this case, Manhasset Pizza and Fradler applied for an off-street parking variance in connection with a change in the storefront's use from a retail gift shop to a restaurant. Because both uses are permitted in the zoning district, the ZBA properly considered the application as a request for an area variance. We have reviewed Colin's remaining arguments and consider them to be without merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs. Opinion by Judge Read. Chief Judge Lippman and Judges Graffeo, Smith, Pigott, Rivera and Abdus-Salaam concur.

Decided October 16, 2014