Matter of Nowak v Town of Southampton (2019 NY Slip Op 05984)





Matter of Nowak v Town of Southampton


2019 NY Slip Op 05984


Decided on July 31, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
MARK C. DILLON
LEONARD B. AUSTIN
SYLVIA O. HINDS-RADIX, JJ.


2017-04242
 (Index No. 376/16)

[*1]In the Matter of Ann L. Nowak, appellant,
v
Town of Southampton, et al., respondents.


Joseph Lombardo, Water Mill, NY, for appellant.
James M. Burke, Town Attorney, Southampton, NY (Kathryn V. Garvin of counsel),
for respondents Town of Southampton and Town of Southampton Zoning Board of Appeals.
O'Shea, Marcincuk & Bruyn, LLP, Southampton, NY (Robert E. Marcincuk of counsel), for respondents Insource East Properties, Inc., Joseph Giannini, and Maureen Giannini (no brief filed).



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review a determination of the Town of Southampton Zoning Board of Appeals dated December 17, 2015, which, after a hearing, granted an application for an area variance, the petitioner appeals from a judgment of the Supreme Court, Suffolk County (Joseph C. Pastoressa, J.), dated February 2, 2017. The judgment denied the petition and dismissed the proceeding.
ORDERED that the judgment is affirmed, with costs to the respondents Town of Southampton and Town of Southampton Zoning Board of Appeals, payable by the petitioner.
The respondent Insource East Properties, Inc. (hereinafter Insource), as contract vendee for two adjoining and undeveloped parcels of real property, identified as Lots 6 and 32, in the Town of Southampton, sought an area variance that would enable it to merge the parcels and construct one single-family dwelling thereon. The parcels are landlocked lots, which only had access to Old Sag Harbor Road by means of a 50-foot-wide deeded right-of-way, in existence since 1949, over neighboring properties, which was adjacent to Lot 32, the smaller of the two lots. The Town's building department had denied an application for a building permit to construct a single-family dwelling on the merged parcels since the parcels did not have proper road frontage. Despite noting that the "[s]eparately owned lots[s] [were] entitled to relief" pursuant to Town of Southampton Code (hereinafter Town Code) § 330-115(D), the Town's building department also requested proof of single and separate ownership for Lot 6.
Town Code § 330-82, which pertains to lot width, requires that a lot have a minimum road frontage of at least 40 feet at the street line. Insource requested an area variance to allow for a minimum road frontage of zero feet since, although the right-of-way provided access to Old Sag Harbor Road, it did not provide the parcels with "road frontage."
The petitioner, a neighbor whose adjoining property is situated to the north of the subject parcels, opposed the application for an area variance on the grounds that the new construction would have a negative impact upon and interfere with her use and enjoyment of her own property and that the hardship was self-created. The petitioner, noting that the combined area of the parcels, 66,537 square feet, would be less than the current zoning requirement minimum, which had been in effect for more than 20 years, also contended that the parcels were not eligible for a variance as separate nonconforming lots with respect to their lack of road frontage because the parcels had merged for zoning purposes.
Following a hearing at which the petitioner testified, in a determination dated December 17, 2015, the Town of Southampton Zoning Board of Appeals (hereinafter the ZBA) granted the application for an area variance to allow zero feet of road frontage for the subject parcels. The petitioner thereafter commenced this proceeding pursuant to CPLR article 78 to annul the determination. The Supreme Court denied the petition and dismissed the proceeding. The petitioner appeals.
"[T]he general rule is that a determination of a zoning board of appeals should not be set aside unless it is illegal, arbitrary and capricious, or an abuse of discretion" (Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent, 65 AD3d 154, 160; see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613; Matter of 278, LLC v Zoning Bd. of Appeals of the Town of E. Hampton, 159 AD3d 891, 892). "A zoning board's interpretation of its zoning code is entitled to great deference" (Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent, 65 AD3d at 160; see Matter of White Plains Rural Cemetery Assn. v City of White Plains, 168 AD3d 1068, 1069). "However, where the issue involves pure legal interpretation of statutory terms, deference is not required" (Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent, 65 AD3d at 160; see Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y., 91 NY2d 413, 419). Here, contrary to the petitioner's contention that the parcels were not "lot[s]" as that term was defined by Town Code § 330-5, upon which building was allowed, the subject parcels were "lot[s]" which became nonconforming at differing points and thus eligible for the relief that the ZBA granted. The term "lot" is defined by the Town Code as "[a] parcel of land occupied or capable of being occupied by one or more principal buildings and accessory buildings or uses in accordance with the provisions of this chapter" (Town Code § 330-5). Further, a "nonconforming lot" is defined as "[a]ny lot lawfully existing in single and separate ownership at the effective date of this chapter or any amendment thereto affecting such lot, which does not conform to the dimensional regulations of this chapter for the district in which it is situated. If such lot shall thereafter be held in the same ownership as an adjoining parcel, it shall lose its status as a nonconforming lot, except to the extent that the lot created by the merger of the two parcels shall remain nonconforming in the same respect" (Town Code § 330-5 [emphasis added]).
At the time of the area variance application, the parcels were located in the CR-200 residential zoning district, which requires a minimum lot area of 200,000 square feet and a lot width of 200 feet. In 1957, when the Town Code was enacted, the parcels were designated as being in a C residential zoning district, which required a minimum lot area of 15,000 square feet and a lot width of 100 feet to be conforming. Lot 32 has a lot area of approximately 12,495 square feet and, thus, was nonconforming upon the enactment of the Town's zoning ordinance but had been a "lot" prior thereto (see Matter of Louchheim v Zoning Bd. of Appeals of Town of Southampton, 44 AD3d 771, 773). The zoning requirement was changed in 1972 so that the parcels were considered to be in an R-40 zoning district, requiring a minimum lot area of 40,000 square feet and a lot of width of 150 feet to be conforming. Lot 6 remained in conformance with the Town Code despite this change and would have been considered a "lot." In 1983, the area was upzoned to its present CR-200 designation. As a result, Lot 6, which is comprised of 54,042 square feet, was rendered nonconforming at that time, thereby changing its status from a "lot" to a nonconforming lot.
Town Code § 330-115(D) provides, in pertinent part, that "[a] nonconforming lot separately owned and not adjoining any lot or land in the same ownership at the effective date of this chapter and not adjoining any lot or land in the same ownership at any time subsequent to such date may be used, or a building or structure may be erected on such lot for use . . . provided that proof of such separate ownership is submitted in the form of an abstract of title showing the changes of title to said lot." The ZBA rationally concluded based on the evidence submitted in support of the application that the parcels were held in single and separate ownership from 1954 through the present (see Town Code §§ 330-5, 330-115[D]). In addition, the ZBA has the power to grant area variances to those parcels and is "specifically empowered to grant [a] variance" "modifying the yard requirements of a nonconforming lot which qualified under the terms of § 330-115D as to ownership, but where compliance with the dimensional provisions of this chapter is not feasible" (Town Code § 330-167[C]; see Town Code § 330-166[C]). Moreover, upon merger of the two parcels as proposed by Insource, the new merged parcel would remain nonconforming "in the same respect" in that it would continue to be nonconforming as to lot width and lot area (Town Code § 330-5).
Furthermore, the ZBA's determination to grant the application for an area variance to allow zero feet of road frontage for the subject parcels had a rational basis. In determining whether to grant an application for an area variance, a zoning board must engage in a balancing test weighing "the benefit to the applicant if the variance is granted . . . against the detriment to the health, safety and welfare of the neighborhood or community by such grant" (Town Law § 267-b(3)(b); see Matter of Colin Realty Co., LLC v Town of N. Hempstead, 24 NY3d 96, 103; Matter of Stengel v Town of Poughkeepsie Zoning Bd. of Appeals, 167 AD3d 754, 755). A zoning board "shall also consider: (1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance" (Town Law § 267-b[3][b]).
Here, the ZBA engaged in the required balancing test and considered the relevant statutory factors (see Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d at 612-615). Contrary to the petitioner's contentions, the evidence before the ZBA supported its findings that the requested relief would not produce an undesirable change in the character of the neighborhood, have an adverse impact on the physical or environmental conditions, or otherwise result in a detriment to the health, safety, and welfare of the neighborhood or community, even if the proposed variance was arguably substantial and the alleged difficulty was self-created (see Matter of Stengel v Town of Poughkeepsie Zoning Bd. of Appeals, 167 AD3d at 756; Matter of Wantagh Woods Neighborhood Assn. v Board of Zoning Appeals of Town of Hempstead, 208 AD2d 935, 936-937). There was no evidence before the ZBA to show that granting the application would adversely affect environmental conditions (see Matter of L & M Grazoise, LLP v City of Glen Cove Zoning Bd. of Appeals, 127 AD3d 863, 865). Moreover, the ZBA rationally concluded that the benefit sought, specifically a variance that would enable the construction of a single-family dwelling on a lot without road frontage, could not be achieved by a feasible alternative method which would not require an area variance (see Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals, 43 AD3d 926, 929-930).
Accordingly, we agree with the Supreme Court that the ZBA's determination granting the application for an area variance was not irrational or arbitrary and capricious.
In light of our determination, the petitioner's remaining contention need not be addressed.
RIVERA, J.P., DILLON, AUSTIN and HINDS-RADIX, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court